GREEN *v.* JONES.

Opinion delivered April 28, 1924.

1. TAXATION—SUPPORT AND MAINTENANCE OF STATE PENITENTIARY.— As the State Penitentiary is a State institution, taxation for its support and maintenance may be levied upon the property situated within the State.

2. CONVICTS—POWER OF LEGISLATURE.—The Legislature was authorized to create a Penitentiary Commission and vest it with authority to manage and control convicts sentenced to the State Penitentiary.

3. CONVICTS — POWERS OF PENITENTIARY COMMISSION.— The Penitentiary Commission is merely an administrative board, created for carrying into effect public policy of the State as expressed by its Legislature with regard to the management of those convicted of felonies.

4. STATES—AUTHORITY OF CITIZEN AND TAXPAYER TO SUE.—Each citizen and taxpayer has an interest, where his pecuniary or property rights are involved, in seeing that no administrative board, such as the Penitentiary Commission, shall discharge its duties in a manner violative of the statute creating it and defining the duties that it may perform and the things which it may not do.

5. STATES—INJUNCTION AGAINST LEASING CONVICTS.—Where the Attorney General failed to do so, citizens and taxpayers were entitled to bring a suit against the Penitentiary Commissioners to restrain them from leasing convicts, in violation of Crawford & Moses' Digest, § 9694.

6. CONVICTS—LEASE.—A contract leasing convicts to a corporation to construct a dam is in violation of Crawford & Moses' Dig., § 9694, though physical control and custody of the convicts were under the supervision and control of guards and wardens appointed by the Penitentiary Commission.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

STATEMENT OF FACTS.

W. E. Green and others brought this suit in equity against J. Walker Jones and others to restrain them from hiring out and leasing the convicts now confined in the penitentiary, and under the control of the defendants as a Board of Commissioners for the management of the State Penitentiary.

According to the allegations of the complaint, the plaintiffs are residents, citizens, and taxpayers of different counties in the State of Arkansas, and the defendants constitute the members of the Board of Penitentiary Commissioners and the clerk thereof. The complaint also alleges that the board, in violation of law, has entered into contracts with different persons for the hire and lease of convicts sentenced to confinement in the State Penitentiary.

It is also specifically alleged that the board had hired out and leased a great number of convicts to a corporation constructing a dam known as the Remmel Dam, located in Hot Spring County, Arkansas, and that the convicts have, for many months prior to the bringing of this suit, been employed by said corporation in the construction of said dam. The complaint alleges that the plaintiffs are without legal remedy in the premises, and that the hiring and leasing of said convicts is in violation of our statutes regulating and prescribing the methods of keeping and working convicts sentenced to confinement in the State Penitentiary.

A demurrer was first interposed to the complaint. Subsequently an answer was filed by the defendants in which they claimed that they had a right to lease the convicts to the corporation in question, and a copy of the lease contract was made an exhibit to the answer. Proof was taken to establish the allegations of the complaint and the averments of the answer.

The chancellor was of the opinion that the plaintiffs had no such interest in the matters complained of as to entitle them to maintain this action, and it was decreed that the complaint be dismissed for want of equity.

To reverse that decree the plaintiffs have duly prosecuted an appeal to this court.

*Webb Covington*, for appellant.

Taxpayers have the right to resort to a court of equity to prevent a misapplication of public funds, such right being based upon the fact that they are equitable owners of such funds, and their liability to replace the

funds in the public treasury to cover the deficiency which would be caused by the misapplication. 32 C. J. § 425; 101 U. S. 601; 89 Calif. 215; 65 Colo. 443; 34 Conn. 105; 270 Ill. 304; 124 Ill. 123; 13 Ill. 336; 177 Ill. 97; 177 Ill. 194; 208 Ill. 328; 266 Ill. 443; 46 Ind. 96; 32 Ind. 244; 88 Ia. 579; 166 Mass. 347; 13 Mich. 540; 65 Minn. 176; 37 Mo. 250; 52 Mont. 378; 175 N. Y. 432; 85 Ark. 89; 123 Ark. 255. It is a violation of law to permit the convicts to be worked at places other than those mentioned in the statute. Crawford & Moses' Digest, § 9693. The board has no discretion in the matter. The bringing of such a suit as this is not a suit against the State. 91 Ark. 537. The contention that the right to injunctive relief must be grounded upon financial injury is without merit. Citizens have a right to demand that officers obey the law, and, in case of an infraction, any citizen may invoke the help of the courts. 205 U. S. 230; 180 U. S. 208; 185 U. S. 125; 239 U. S. 121. The Attorney General having failed to act, plaintiffs have the right to maintain the suit.

*J. S. Utley,* Attorney General, *John L. Carter* and *Wm. T. Hammock,* Assistants, for appellee.

Appellants have no legal capacity to sue. Crawford & Moses' Digest, §§ 1089, 1095. They do not fall within the exceptions to the requirements of these statutes as set out in §§ 1091, 1092 and 1094, C. & M. Digest. See also 25 Ark. 304 and 41 Ark. 526. The chancery court had no jurisdiction, unless plaintiffs show an individual or property right personal to them as being trespassed, and that they have no remedy at law. See 43 Ark. 62; 82 Ark. 236; 93 Ark. 7. An injunction shall not be granted where plaintiff has a full, adequate and complete remedy at law. 20 Ark. 340; 48 Ark. 510; 92 Ark. 118. Plaintiffs' action was in a court of law. The action of plaintiffs is an attempt to control the discretion of the board, which may not be done, except it interferes with some individual right. 28 Ark. 455. A chancery court has no jurisdiction to restrain acts simply because they

are criminal, where they do not injure or invade any property or civil right of the public.  81 Ark. 117; 85 Ark. 230; 98 Ark. 437; 98 Ark. 521; 99 Ark. 636.

HART, J., (after stating the facts).  It may be stated at the outset that a State Penitentiary is necessarily a State institution, and that taxation for the support and maintenance of it may be levied upon the property situated within the State.  The Legislature has full power to pass statutes relative to the custody, care and control of persons convicted of crime.  Our Legislature has created a Penitentiary Commission and vested it with authority to manage and control convicts sentenced to the State Penitentiary under the provisions and regulations prescribed by the statute.  Crawford & Moses' Digest, chapter 164, subdivision 13, and General Acts of 1921, p. 50.

The chancery court held that the plaintiffs had no legal capacity to bring the suit, and, on this account, dismissed their complaint for want of equity.  This holding was based upon the opinion of the chancellor that the plaintiffs had no such special interest in the matter as would entitle them to bring the suit.

We think the learned chancellor erred in so holding.  Section 13 of article 16 of the Constitution of 1874 provides that any citizen of any county may institute a suit in behalf of himself and all others interested to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.  Under this section this court has uniformly upheld the jurisdiction of chancery courts, upon the application of citizens and taxpayers, to enjoin the collection of illegal taxes levied on their property.

As we have already seen, the Legislature has created the Penitentiary Commission and intrusted it with the duty of controlling and managing convicts sentenced to the State Penitentiary, and also of operating the State prison under the regulations prescribed by statute.  Such a commission is merely an administrative board created by the State for carrying into effect the public policy of the State with regard to the management of its convicts as expressed by its legislation.  The control and manage-

ment of the State convicts and the operation of the State prison necessarily involves the expenditure of large sums of money, which can only be obtained by taxes levied upon the property situated in the State, or by profits derived from working the convicts in some way. The management and operation of the State Penitentiary may be wrongfully administered by the officers intrusted with its management, so as to make such administration an illegal burden and exaction upon the taxpayers of the State. The public policy of the State is to be determined from the acts of the Legislature regulating the management of the penitentiary; and if those intrusted herewith should violate the statutes designed to regulate their conduct in the premises, it will be readily seen that illegal taxation may be the result of such mismanagement and violation of the statute. The question is, not so much what has been done, as what can be done in the premises.

Each citizen and taxpayer has an interest, where his pecuniary or property rights are involved, in seeing that no administrative board like the one now under consideration shall discharge its duties in a manner violative of the statute creating it, and specifically defining the duties that it may perform as well as the things which it shall not do. This holding conforms to our previous decisions on the principles of law involved. *Russell* v. *Tate,* 52 Ark. 541; *Griffin* v. *Rhoton,* 85 Ark. 89, and *Farrell* v. *Oliver,* 146 Ark. 599.

In the first mentioned case it was held that the taxpayers of a town may maintain a suit in equity to prevent the misapplication of its funds, and that a chancery court has power in such a case to grant affirmative as well as injunctive relief.

In the second case cited the court held that a citizen and taxpayer may bring suit to compel a State officer to refund the excess of his salary or fees over the constitutional limit thereto, after the Attorney General has refused to do so.

In the case last cited the court held that a citizen and taxpayer, under the clause of the Constitution above

referred to, can maintain a suit in equity to prevent a misapplication of State funds as well as of the funds of counties, cities or towns. In that case the court sustained the suit of a taxpayer seeking to enjoin an appropriation for the maintenance of the industrial schools, which appropriation was not made in the manner required by the Constitution, and was therefore invalid. In that case the court also approved the doctrine announced by the Supreme Court of Illinois to the effect that taxpayers may resort to a court of equity to prevent the misapplication of public funds, and that this right is based upon the taxpayers' equitable ownership of such funds, and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation.

It appears, from reading the contract which is sought to be enjoined in this case, that it provides that the Arkansas State Penitentiary Commission shall furnish all board, including food and its preparation for the convicts supplied under the contract, and all blankets and cover needed; and shall deliver the convicts to the place where they are to work, and remove them therefrom, as well as supply, at the commission's expense, all guards, cooks and help needed for the care and handling and support of said convicts, without responsibility upon the part of said corporation not expressly assumed in the contract.

In order to perform this condition of the contract, it is evident that money would be needed to be taken from the public treasury. It is no answer to say that the money received from hiring the convicts would repay the sum so expended. This might or might not be the case. The taxpayer has a special interest in the matter because, in the first instance, the expense agreed to be borne must necessarily come out of the public treasury.

But it is insisted that, under the authorities cited above, the taxpayers could not bring suit, because the bill contains no allegation that the Attorney General was requested to bring the action and failed or refused to do so. While there is no direct and express allegation in

the bill that the Attorney General refused to bring the action, yet the facts disclosed by the record show what is equivalent to such refusal. The present suit was filed on January 25, 1924. The present Penitentiary Commission was created by the Legislature of 1921. The complaint alleges that many convicts are now and have been for many months prior to the filing of the suit hired and leased to individuals, firms, partnerships and corporations for the purpose of clearing land, constructing houses, levees, dams, and public improvements, in violation of the statute.

The complaint further alleges that a great number of convicts are now and have, for many months prior to the filing of the suit, been employed in constructing a dam known as the Remmel Dam, in Hot Spring County, Arkansas.

It appears from the record that the Attorney General is representing the Penitentiary Commissioners in the defense of this action. The facts expressly show that the Attorney General has failed to act, and that the delay has been for such length of time, without any excuse therefor, that a legal presumption arises that he has refused to bring the action. Therefore the plaintiffs are entitled to maintain the suit, under the authorities above cited. This makes it necessary for us to determine whether or not the contract in question is illegal.

Section 9692 of Crawford & Moses' Digest provides that the convicts in the penitentiary shall not be worked within the corporate limits of the city of Little Rock, except on public improvements and buildings and grounds owned by the State.

Section 9693 provides for their employment on a State farm, and prescribes the manner of regulating their employment there.

Section 9694 provides that the commission shall not hire out or lease, or permit any person to hire out or lease, any of the convicts of this State, to any person or persons whomsoever.

Section 9695 provides for their work on public roads leading into the convict farms, at certain times and under certain circumstances.

The language of § 9694 is plain and unambiguous. It provides that no convicts shall be leased, and the contract under consideration leasing them to the corporation to be used in constructing the Remmel dam is in violation of the statute, and void as against public policy.

It is urged that the convicts have not been leased within the meaning of the statute, because their physical control is under the supervision and direction of guards and wardens appointed by the Penitentiary Commission. The physical custody of the convicts by the guards and wardens appointed by the Penitentiary Commission does not and cannot prevent the contract from being one of hiring out or leasing the convicts. Such a construction of the statute would, in effect, render it useless and ineffectual for the purpose for which it was enacted.

The public policy of the State, as shown by the legislative will, was to prevent letting of the convicts to persons or corporations to be worked by them for private gain. To allow the contracts to stand would be contrary to the policy of the law, as tending obviously to result in the violation of the purpose and spirit of our statute prescribing the rules and regulations which are to govern the Penitentiary Board in the control and working of the State convicts.

The result of our views is that the decree must be reversed, and the cause will be remanded with directions to the chancery court to grant the prayer of the complaint and to restrain the Arkansas State Penitentiary Commission and the members thereof from hiring out and leasing the State convicts.

It is so ordered.