GHEGAN & GHEGAN, INC., On Behalf of Itself and All Taxpayers Similarly Situated *v.* Richard WEISS, Director of the Arkansas Department of Finance and Administration

98-1310                                                       991 S.W.2d 536

Supreme Court of Arkansas
Opinion delivered June 3, 1999

---

*Timothy Davis Fox, PLLC,* by: *Timothy Davis Fox,* and *Bond & O'Brien,* by: *Pat O'Brien,* for appellant.

*Kenneth R. Williams,* for appellee.

A NNABELLE CLINTON IMBER, Justice. This is an illegal-exaction case. The appellant, Ghegan & Ghegan, Inc. ("Ghegan"), claims that the trial court erred when it ruled that Ghegan did not have standing to challenge the constitutionality of a portion of the Arkansas Soft Drink Tax Act. We reverse and remand.

Ghegan, an Arkansas Corporation, filed on behalf of itself and all taxpayers similarly situated an illegal-exaction action challenging the constitutionality of section 26-57-904 (Repl. 1997) of the Arkansas Soft Drink Tax Act, which provides that:

(a) There is hereby levied and there shall be collected a tax upon every *distributor, manufacturer, or wholesale dealer,* to be calculated as follows:

(1) *Two dollars* ($2.00) per gallon for each gallon of soft drink *syrup* or simple syrup sold or offered for sale in the State of Arkansas;

(2) *Twenty-one cents* (21¢) per gallon for each gallon of *bottled* soft drinks sold or offered for sale in the State of Arkansas;

(3) Where a package or container of *powder* or other *base product,* other than a syrup or simple syrup, is sold or offered for sale in Arkansas, and the powder is for the purpose of producing a liquid soft drink, then the tax on the sale of each package or container shall be equal to *twenty-one cents* (21¢) for each gallon of soft drink which may be produced from each package or container by following the manufacturer's directions. This tax applies when the sale of the powder or other base is sold to a

retailer for sale to the ultimate consumer after the liquid soft drink is produced by the retailer.

(b)(1)  Any *retailer or retail dealer* who purchases bottled soft drinks, soft drink syrup, simple syrup, powder, or base product from an unlicensed distributor, manufacturer, or wholesale dealer shall be liable for the tax levied in subsection (a) of this section on those purchases.

(2)  A *retailer* shall not be subject to this tax if the retailer purchases syrups, simple syrups, powders or base products, or soft drinks from a supplier licensed under § 26-57-909.

(Emphasis added.)  Ghegan argued that section 26-57-904(a) violated the Equal Protection Clause of the United States and Arkansas Constitutions because there was no rational basis for taxing soft-drink syrup at a higher rate than bottled soft drinks, powder, or other base products.[1]

Ghegan, a "retailer" or "retail dealer" as defined by section 26-57-902(b)(11) (Repl. 1997) of the Act, asserted that it had standing under Article 16, Section 13, of the Arkansas Constitution to bring the action because it had been assessed, had paid, and continued to pay the tax set forth in section 26-57-904(a).  In contrast, the DFA argued in its motion to dismiss that Ghegan did not have standing because the tax imposed by section 26-57-904(a) specifically applied to distributors, manufacturers, and wholesale dealers, but not to retailers or retail dealers such as Ghegan.  The trial court agreed with the DFA and dismissed Ghegan's complaint without prejudice.  This appeal followed.

■  The sole issue on appeal is whether the trial court erred when it ruled that Ghegan did not have standing under Article 16, Section 13, of the Arkansas Constitution to challenge the constitutionality of section 26-57-904(a) of the Arkansas Soft Drink Tax Act.  When reviewing a trial court's ruling on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), we treat the facts alleged in the

---

[1] Ghegan also challenged the constitutionality of Ark. Code Ann. § 26-57-907(a) (Repl. 1997), which deals with sales to retailers located in border cities. This particular challenge was not discussed by the parties on appeal.

complaint as true and view them in the light most favorable to the party who filed the complaint. *Brown v. Arkansas State Heating, Ventilating, Air Conditioning & Refrigeration (HVACR) Licensing Bd.*, 336 Ark. 34, 984 S.W.2d 402 (1999); *Hames v. Cravens*, 332 Ark. 437, 966 S.W.2d 244 (1998).

▆ Article 16, Section 13, of the Arkansas Constitution provides that:

> *Any citizen* of any county, city or town may institute suit in behalf of himself and all others *interested,* to protect the inhabitants thereof against the enforcement of any illegal exactions *whatever.*

(Emphasis added.) This constitutional provision is self-executing and requires no enabling act or supplemental legislation to make its provisions effective. *Hartwick v. Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989).

▆▆ When construing a provision of the Arkansas Constitution, we have said that when the language of the provision is plain and unambiguous, each word must be given its obvious and common meaning, and neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Hoyle v. Faucher*, 334 Ark. 529, 975 S.W.2d 843 (1998); *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998). The plain and unambiguous language of Ark. Const. art. 16, § 13, provides that "any" "interested" "citizen" has standing to bring an illegal-exaction case. In *McCarroll v. Gregory-Robinson-Speas, Inc.*, 198 Ark. 235, 129 S.W.2d 254 (1939), we held that a corporation is a "citizen" as used in Article 16, Section 13. Hence, the sole issue we must decide in this case is whether Ghegan is sufficiently "interested" such that it has standing to bring an illegal-exaction case under Article 16, Section 13.

▆ To answer this question, we first turn to our cases establishing the traditional standing requirements. In numerous cases, we have held that a litigant has standing to challenge the constitutionality of a statute if the law is unconstitutional as applied to that particular litigant. *Morrison v. Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997); *Hamilton v. Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994); *Medlock v. Fort Smith Serv. Fin. Corp.*, 304 Ark. 652, 803 S.W.2d 930 (1991). The general rule is that

one must have suffered injury or belong to a class that is prejudiced in order to have standing to challenge the validity of a law. *Morrison, supra; Medlock, supra.* Stated differently, plaintiffs must show that the questioned act has a prejudicial impact on them.[2] *Tauber v. State,* 324 Ark. 47, 919 S.W.2d 196 (1996); *Garrigus v. State,* 321 Ark. 222, 901 S.W.2d 12 (1995).

■ We have no hesitancy in saying that Ghegan has asserted sufficient facts to satisfy these traditional standing requirements. First, section 26-57-904(a) is allegedly "unconstitutional as applied" to Ghegan because it must pay a higher price for syrup as opposed to bottled soft drinks, powder, or other base products. Second, Ghegan has "suffered an injury" because it must pay more money for syrup now that the tax has been imposed. Third, Ghegan "belongs to a class that is prejudiced" because retailers who purchase syrup must pay more taxes than retailers who purchase bottled soft drinks, powder, or other base products.

■ The question then becomes whether Article 16, Section 13, has somehow altered or increased these traditional standing requirements. We have previously distinguished two types of illegal-exaction cases that can arise under Article 16, Section 13. *See, e.g., Barker v. Frank,* 327 Ark. 589, 939 S.W.2d 837 (1997); *Pledger v. Featherlite Precast Corp.,* 308 Ark. 124, 823 S.W.2d 852 (1992). The first type of an illegal-exaction case is the "public-funds" case where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent. *See, e.g., Beshear v. Ripling,* 292 Ark. 79, 728 S.W.2d 170 (1987) (claiming that tax dollars were spent impermissibly to pay a municipal judge who had usurped his office); *Hartwick v. Thorne,* 300 Ark. 502, 780 S.W.2d 531 (1989) (alleging that public funds were impermissibly being spent on a bond issued for a different purpose).

---

[2] We have also recognized third-party standing in cases where the issue would not otherwise be susceptible of judicial review and it appears that the third party is sufficiently interested in the outcome that the interest of the party whose constitutional rights were allegedly deprived would be adequately represented. *Morrison, supra; Medlock, supra.* The appellants, however, do not raise third-party standing in their briefs, nor did they allege it below.

■ We have explained that citizens have standing to bring a public-funds case because they have a vested interest in ensuring that the tax money they have contributed to the state treasury is lawfully spent. *Nelson v. Berry Petroleum, Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967); *Green v. Jones*, 164 Ark. 118, 261 S.W. 43 (1924). Thus, the only standing requirements we have imposed in public-funds cases are that the plaintiff be a citizen and that he or she have contributed tax money to the general treasury. *See Nelson, supra; Green, supra.* We have not required the plaintiff to trace his or her individual tax contribution to the tax money that is allegedly being spent in an illegal manner, nor have we required the plaintiff to establish a significant tax contribution to the state treasury. Hence, in public-funds cases, we have given the word "interested" as used in Article 16, Section 13, a very broad construction.

■ The second type of illegal-exaction case, such as the case at hand, is an "illegal-tax" case, where the plaintiff asserts that the tax itself is illegal or contrary to a constitutional or statutory provision. *See, e.g., Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997) (claiming that a real-property tax violated ARK. CONST. amend. 59); *Ragan v. Venhaus*, 289 Ark. 266, 711 S.W.2d 467 (1986) (contending that a use tax was imposed in violation of ARK. CONST. art. 16, § 11). The parties did not cite, nor could we find, any illegal-tax cases that discuss the standing requirements to bring such an action. The DFA, however, contends that the standing requirements to bring an "illegal tax" illegal-exaction case are more stringent than the standing requirements to bring a "pubic-funds" illegal-exaction case. We, however, can find no such distinction in our cases or the language of Article 16, Section 13.

Furthermore, citing *Foxsmith, Inc. v. Coca-Cola Bottling Co.*, 323 Ark. 13, 912 S.W.2d 923 (1996), the DFA claims that only a taxpayer that is "subject to" or directly required to return and remit the tax under the terms of the statute imposing it has standing to challenge that tax. In particular, the DFA claims that only distributors, manufacturers, or wholesale dealers have standing to

challenge section 26-57-904(a) because they are the only entities "subject to" the tax imposed in the language of that section. We disagree with this interpretation of *Foxsmith.*

The facts of *Foxsmith* are very similar to the case at hand, but it was not an illegal-exaction case nor did it involve the standing requirements imposed by Article 16, Section 13. As in the case before us today, Coca-Cola, the soft-drink distributor in *Foxsmith,* submitted an invoice to the soft-drink retailer, Foxsmith, that included an itemized or separate charge for the full amount of the soft-drink tax. *Id.* Instead of filing an illegal-exaction case, Foxsmith sued Coca-Cola claiming that the charge was prohibited by section 26-57-904(b)(2) of the Soft Drink Act, which provides that a retailer shall not be "subject to" the tax if it purchased the soft drinks from a licensed distributor, such as Coca-Cola. *Id.* On appeal, we acknowledged that Ark. Code Ann. § 26-57-906(a)(1) (Repl. 1997) required the licensed distributor to file a monthly return and remit the tax to the DFA director on or before the fifteenth day of each month. *Id.* We also recognized that Soft Drink Tax Regulation—1993-8 C. 2. and a DFA memorandum specifically authorized the licensed distributors to pass on the full amount of the tax to the retailers by including the tax in the cost of the product, or by separately stating the tax on the invoice or document of sale. *Id.* However, even when the distributors pass on the full amount of the tax to the retailers, they are still required by section 26-57-906(a)(1) to report and remit the tax to the DFA. *Id.* Thus, we held in *Foxsmith* that being "subject to" the Act, as mentioned by section 26-57-904(b)(2) means "the one who must file a monthly return and remit the tax to the state." *Id.* Because Foxsmith, the retailer, was not required to return or remit the tax even when the licensed distributor passed on the full amount of the tax to it, we held that the retailer was not impermissibly "subject to" the tax as prohibited by section 26-57-904(b)(2). *Id.*

In sum, in *Foxsmith,* we merely held that a distributor, manufacturer, or wholesale dealer may pass on the entire amount of the soft-drink tax to the retailer, and more important to this

case, that the one who actually pays the tax may be different from the entity that reports and remits that tax to the DFA. *Id.* In other words, we held that the Soft Drink Tax Act allows the tax "collector" to be different from the tax "payer." In *Foxsmith*, we merely harmonized sections 26-57-904 and 26-57-906 of the Soft Drink Tax Act without addressing the standing requirements of Article 16, Section 13.

Although Ghegan is not the tax "collector," because it is not required to formally remit and return the tax to the DFA under section 26-57-906, it has paid and allegedly will continue to pay the full amount of the soda tax, which the distributor passed on in a separately itemized charge on the sales invoice. Under such circumstances, it is impossible for us to say that Ghegan is not "interested" as that term is used in Article 16, Section 13, and in our cases broadly interpreting this constitutional provision. Instead, we hold that both Ghegan, the one who pays the tax, and its distributor, the one who collects, returns, and remits the tax to the DFA, are sufficiently "interested" to have standing to bring an illegal-exaction case under Article 16, Section 13.

Finally, we note that policy considerations arising under this case also favor reversal. If we adopted the DFA's narrow interpretation of Article 16, Section 13, only the distributors, manufacturers, and wholesale dealers would have standing to challenge the constitutionality of section 26-57-904(a). These parties, however, are not likely to raise such a challenge because they can pass on the entire soda tax to the retailers. Hence, section 26-57-904(a) would probably go untested because the only group with standing would not have the financial motivation to challenge the provision. For these reasons, we hold that the trial court erred when it ruled that Ghegan did not have standing under Article 16, Section 13, to bring this illegal-exaction action. Accordingly, we reverse the order of dismissal and remand the case for proceedings consistent with this opinion.

Reversed and remanded.

BROWN and THORNTON, JJ. concur.

ROBERT L. BROWN, Justice, concurring. I write to emphasize that this opinion is limited to its facts. By that, I mean limited to a fact situation where it is clearly documented in writing that the taxpayer has passed on payment of the precise tax to a third party. I underscore this because at oral argument counsel for Ghegan contended that any party in the sales chain, including the consuming public, would have standing to bring a class action illegal-exaction lawsuit by merely asserting partial or full payment of a tax by virtue of a hike in the price of the goods. That goes way too far in my opinion in determining who is "interested" for purposes of Article 16, Section 13, of the Arkansas Constitution.

I also take issue with the majority's lament that if a distributor passes on the tax, it has no incentive to contest its legality. I disagree with such an absolute conclusion. Once the $2.00 per gallon tax on soft-drink syrup begins to curtail a distributor's sales (as compared to the twenty-one cents per gallon for soft drinks produced by powder), the distributor's incentive to contest the disparity in tax treatment would become very real indeed. I can readily see a distributor's bringing an equal protection lawsuit under these circumstances, even though it has passed on the cost of the tax to a retailer.

THORNTON, J., joins.