Mr. Oscar Stilley Attorney at Law Central Mall Plaza Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 1993), of a popular name and ballot title for a proposed amendment to the Arkansas Constitution. You have submitted two previous popular names and ballot titles for similar measures, which I rejected in Opinions 99-198 and 99-260 due to unresolved ambiguities in the text of each measure. You have made changes to the text of your measure and now present the following proposed popular name and ballot title for my certification:
 POPULAR NAME AN AMENDMENT TO LIMIT THE SALARIES AND BENEFITS OF PUBLIC SERVANTS, TO REQUIRE THAT RETIREMENT FUNDS FOR PUBLIC SERVANTS BE KEPT IN SEGREGATED ACCOUNTS, TO PROVIDE PROCEDURES FOR THE RECOVERY OF ILLEGAL COMPENSATION OR EXPENDITURES, AND FOR OTHER PURPOSES
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION LIMITING THE SALARIES OF PUBLIC SERVANTS TO $100,000 PER YEAR, AND PROVIDING FOR FRINGE BENEFITS FOR ALL PUBLIC SERVANTS IN THE AMOUNT OF 25% OF DIRECT COMPENSATION; PROVIDING THAT THE TERM "PUBLIC SERVANTS" SHALL FOR PURPOSES OF THIS AMENDMENT MEAN ALL OFFICERS OR EMPLOYEES OF THE STATE OF ARKANSAS, ITS INSTITUTIONS, AGENCIES, OR SUBDIVISIONS, PAID IN WHOLE OR IN PART FROM STATE OR LOCAL TAXES, FEES, FINES, PENALTIES, TUITION, OR RENTS OF STATE OR LOCAL PROPERTY, BUT NOT PERSONS WHOSE COMPENSATION IS FIXED BY CONSTITUTIONAL AMENDMENT AS A PERCENTAGE OF THE NET SAVINGS TO THE PUBLIC TREASURY, AND/OR A PERCENTAGE OF THE NET PROFITS OF A STATE AGENCY; PROVIDING THAT PUBLIC SERVANTS WHO WORK LESS THAN 50 WEEKS OF ACTUAL WORK PER YEAR SHALL RECEIVE SALARY NOT TO EXCEED $2,000 PER FULL WEEK ACTUALLY WORKED; PROVIDING THAT PERSONAL SERVICES CONTRACTS SHALL NOT BE USED TO EVADE THE LIMITATIONS OF THIS AMENDMENT; PROVIDING THAT THE SALARY LIMITATIONS MAY BE INCREASED OR DECREASED BY POPULAR VOTE AT REGULARLY SCHEDULED STATEWIDE ELECTIONS, BY LEGISLATIVE REFERENDUM OR BY INITIATIVE; PROVIDING THAT NOTHING HEREIN SHALL BE CONSTRUED TO LIMIT THE PAYMENT OF ADDITIONAL SALARY OR BENEFITS TO PUBLIC SERVANTS, OUT OF CONTRIBUTIONS FROM THE PUBLIC DESIGNATED FOR THE PURPOSE OF SALARY ENHANCEMENT (SUBJECT TO ETHICAL CONSTRAINTS), NOR TO PROHIBIT PUBLIC SERVANTS FROM EARNING EXTRA MONEY IN PRIVATE SECTOR EMPLOYMENT, OUTSIDE THE NORMAL WORKING HOURS OF SAID PUBLIC SERVANT; PROVIDING THAT THE GENERAL ASSEMBLY MAY MAKE REASONABLE LAWS GOVERNING THE PAYMENT OF EXTRA SALARY, OR WORK OUTSIDE THE NORMAL WORKING HOURS OF A PUBLIC SERVANT, TO THE EXTENT NECESSARY TO PROTECT THE INTERESTS OF STATE GOVERNMENT; DEFINING" FRINGE BENEFITS" AS ALL PUBLIC FUNDS PAID FOR RETIREMENT PLANS OR ACCOUNTS (WHETHER OR NOT MANDATED BY LAW), PAY FOR HOLIDAYS, VACATIONS, OR SICK LEAVE; AND ALL OTHER BENEFITS PROVIDED TO OR FOR THE BENEFIT OF THE PUBLIC SERVANT, CALCULATED AT THE REASONABLE COST OF PROVIDING THE BENEFIT, BUT EXCLUDING UNPAID LEAVE OR BENEFITS PROVIDED PRIMARILY FOR THE BENEFIT OF THE EMPLOYER; PROVIDING THAT FRINGE BENEFITS SHALL NOT COUNT TOWARD ANY SALARY CAP; REQUIRING THAT ALL RETIREMENT ACCOUNTS BE MAINTAINED ON AN ACTUARILY [SIC] SOUND BASIS IN SEGREGATED ACCOUNTS MAINTAINED FOR THAT PURPOSE; PROTECTING THE RIGHTS OF PUBLIC SERVANTS HOLDING RIGHTS IN RETIREMENT PLANS; PROVIDING THAT LESS THAN FULLY FUNDED RETIREMENT ACCOUNTS FOR PUBLIC SERVANTS BE FULLY FUNDED AS SOON AS POSSIBLE; PROVIDING THAT ALL RETIREMENT PLANS FOR STATE OR LOCAL PUBLIC SERVANTS HIRED AFTER JULY 1, 2001, SHALL BE MAINTAINED IN APPROVED PRIVATELY MANAGED RETIREMENT ACCOUNT(S) AS MAY BE CHOSEN BY THE PUBLIC SERVANT; PROVIDING THAT PUBLIC SERVANTS HIRED BEFORE JULY 1, 2001, SHALL HAVE THE OPTION OF PARTICIPATING IN A RETIREMENT PLAN MANAGED BY THE GOVERNMENT, OR TRANSFERRING THE VALUE OF THEIR RETIREMENT ACCOUNT TO A PRIVATELY MANAGED RETIREMENT SYSTEM; PROVIDING THAT ANY PERSON PAYING ANY PART OF ANY LOCAL TAX, WHETHER DIRECTLY OR INDIRECTLY, MAY MAINTAIN SUIT TO RECOVER BACK ANY ILLEGAL EXPENDITURES FOR WHICH THE TAX IS USED; PROVIDING THAT THE STATUTE OF LIMITATIONS ON ALL SUCH ILLEGAL EXACTIONS SHALL BE FIVE YEARS; DEFINING, FOR PURPOSES OF THIS AMENDMENT, THE TERM "FUNDS" OR "EXPENDITURES" TO INCLUDE MONEY, GOODS, SERVICES, OR OTHER VALUABLE CONSIDERATION OBTAINED AT THE EXPENSE OF THE TREASURY OF THE AFFECTED PUBLIC ENTITY, WITH OR WITHOUT OFFICIAL APPROVAL, AND EXPRESSLY INCLUDING THEFT AS CONSTITUTING AN ILLEGAL EXACTION; PROVIDING FOR JOINT AND SEVERAL LIABILITY AGAINST ALL PERSONS OR ENTITIES WHO RECEIVED UNLAWFUL FINANCIAL OR PERSONAL BENEFIT, WHERE TWO OR MORE PERSONS ACT TOGETHER TO CAUSE AN ILLEGAL EXPENDITURE; PROVIDING THAT IN ALL CASES AGAINST ILLEGAL EXPENDITURES OF PUBLIC FUNDS, THE ATTORNEY REPRESENTING THE TAXPAYERS AND CITIZENS SHALL BE ENTITLED TO A REASONABLE ATTORNEY'S FEE, NOT LESS THAN 25% OF ANY COMMON FUND RECOVERED OR PRESERVED FOR THE TAXPAYERS, AND FURTHERMORE SUFFICIENT TO ENCOURAGE REPUTABLE ATTORNEYS TO TAKE SUCH CASES; PROVIDING THAT THE NAMED PLAINTIFF OR PLAINTIFFS WHO BROUGHT SUIT SHALL BE ENTITLED TO 5% OF ANY COMMON FUND RECOVERED; PROVIDING THAT THE RULES HEREIN CONCERNING LAWSUITS AGAINST ILLEGAL EXPENDITURES SHALL BE EFFECTIVE IMMEDIATELY AND CONTROL ANY ACTION BROUGHT TO JUDGMENT AFTER THE PASSAGE OF THIS AMENDMENT; PROVIDING THAT ANY OFFICER OR EMPLOYEE OF THE STATE OR ANY OF ITS AGENCIES, SCHOOL DISTRICTS, OR SUBDIVISIONS, MAKING UNLAWFUL PROFIT OUT OF PUBLIC MONEYS, OR USING THE SAME FOR ANY PURPOSE NOT AUTHORIZED BY LAW, SHALL BE PUNISHED AS MAY BE PROVIDED BY LAW, BUT THAT PART OF SUCH PUNISHMENT SHALL BE DISQUALIFICATION FROM THE HOLDING OF ANY PUBLICLY FUNDED EMPLOYMENT OR OFFICE WITHIN THIS STATE FOR A PERIOD OF FIVE YEARS; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THIS AMENDMENT SHALL NOT BE CONSTRUED OR ENFORCED SO AS TO VIOLATE THE U.S. CONSTITUTION ART. 1, § 10 PROHIBITION OF THE IMPAIRMENT OF THE OBLIGATION OF CONTRACTS; PROVIDING THAT THE AMENDMENT IS SELF-EXECUTING AND SHALL TAKE EFFECT JULY 1, 2001, EXCEPT AS OTHERWISE PROVIDED; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must again reject both your proposed popular name and ballot title due to unresolved ambiguities in the text of your measure. There are a number of additions or changes to your popular name and ballot title which in my view are necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate without the resolution of these ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title under A.C.A. § 7-9-107
(b).
The following ambiguities must be clarified before I can perform my statutory duty:
 1. Section 5 of your proposed amendment states in pertinent part that: "All retirement plans for state or local public servants hired after July 1, 2001, shall be maintained in approved privately managed retirement account(s) as may be chosen by the public servant, from any entity lawfully authorized to offer retirement plans within the State of Arkansas." It is unclear how this Section relates to Section 4 of your proposed amendment. Section 4 limits fringe benefits of public servants to twenty-five percent of direct salary and provides that fringe benefits, including funds paid towards retirement plans or accounts, shall be offered "cafeteria style," with any unused funds paid over to the public servant in cash. Under Section 4, a public servant could presumably decline the provision of all fringe benefits, including any retirement fund or account and elect instead to take the authorized amount in cash. Section 5, on the other hand, requires all retirement plans for public servants first hired after July 1, 2000 to be maintained in approved privately managed retirement account(s) as may be chosen by the public servant, from entities authorized to offer retirement plans in Arkansas. This provision appears to require a formal, privately managed retirement plan or account for such public servants. It may be your intention to require such a privately managed fund or account to the extent the public servant elects retirement benefits as a fringe benefit. The language of Section 5 is unclear in this regard, however.
 2. Section 5 of your proposed amendment also states that "Public servants first hired before July 1, 2001, shall have the option of continuing to participate in their existing retirement plan, or to transfer the value of their retirement account to some other retirement system and direct that all contributions be made to the new retirement account or system on behalf of said public servant." The first ambiguity arising from this section is the question of whether such a public servant may elect to transfer the value of their retirement account to another public retirement system. The language in this regard is not restricted to privately managed retirement plans or systems. I am uncertain whether a transfer of value to another public system is authorized. The second ambiguity arising from this sentence is the meaning of the phrase "the value of their retirement account." Your proposed amendment authorizes the "value of [the public servant's] retirement account" to be transferred to another system. I am uncertain, as an initial matter, whether this phrase refers only to any actual monies deposited to the credit of such an "account" or whether "value" is determined in some other manner. In addition, I cannot determine whether this "value" is to be measured before or after the required "full funding" by the legislature. I cannot determine how this provision will be applied to noncontributory pension plans for certain public servants, where no separate "value" is held in a discrete account to the credit of a particular public servant. See, e.g., A.C.A. § 24-12-120 (payment of certain city attorney pensions to be made, upon retirement, from city general fund); A.C.A. § 24-12-121
(same as to city clerk-clerk treasurer); A.C.A. §§ 24-12-122—123; A.C.A. §§ 24-12-125 and -127 (same as to other officers). In addition, it is unclear how such "value" will be measured for public servants who are not yet vested in the system.
 3. Section 6(a) of your proposed amendment states in pertinent part that: "Any person paying any part of the tax received by any city, county, or town of the State of Arkansas, whether directly or indirectly, shall be entitled to maintain suit to recover back any illegal expenditures by said public entity. . . ." (Emphasis added). I cannot determine the effect of this provision on current law. There are currently two types of illegal exactions. The first is a "public-funds case where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent." Ghegan v. Weiss, 338 Ark. 9, 991 S.W.2d 536 (1999). The second is an "illegal-tax case where plaintiff asserts that the tax itself is illegal or contrary to a constitutional or statutory provision." Id. It appears that Section 6 of your proposed amendment involves the first type of illegal exaction. Current law, however, does not require a plaintiff pursuing such an action to "trace his or her individual tax contribution to the tax money that is allegedly being spent in an illegal manner. . . ." Id. at 16. Section 6(a) of your proposed amendment, however, appears to impose this requirement by restricting standing to persons "paying any part of the tax. . . ." I cannot determine whether it is your intention to change current law on this point. In addition, Section 6(a) authorizes such persons to maintain actions against "any illegal expenditures by [the] public entity." (Emphasis added). It does not appear that the language of your amendment limits the cause of action to illegal expenditures made from "the tax" referenced earlier in the same sentence of your proposal. I cannot, therefore, determine the effect of this language on current law. Finally, the title of Section 6 of your proposed amendment is "Right of Action Against Illegal Compensation, Benefits, or Theft of Public Property." The actual language of Section 6, however, relating to the recovery of "any illegal expenditures" is much broader. I am uncertain, therefore, whether Section 6 has reference only to illegal expenditures relating to the enumerated items in the title of Section 6, or to any and all "illegal expenditures." The conflict in the title of Section 6 and the text of Section 6 causes confusion in this regard.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the issue discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General