The Honorable John E. Brown State Senator 17900 Ridgeway Drive Siloam Springs, AR 72761-8866
Dear Senator Brown:
You have requested an Attorney General in response to the following questions:
 (1) Can the Northwest Regional Airport Authority use the tax and/or revenue it collects to pay for thirty-two people to have dinner at a cost of $125 per person?
 (2) Is the Bentonville/Bella Vista Chamber of Commerce (a non-profit organization) subject to the Freedom of Information Act relating to the tax dollars given to it by the City of Bentonville?
Response
Question 1 — Can the Northwest Regional Airport Authority use the taxand/or revenue it collects to pay for thirty-two people to have dinner ata cost of $125 per person?
It is my opinion that a regional airport authority's use of tax or other revenues to pay for dinner for certain individuals would be suspect under various provisions of the law.
First, the statutes that govern regional airport authorities specifically address the use of the authority's surplus funds. The provision that is most pertinent to your question states:
 (a) If an authority should realize a surplus, whether from operating the airport or leasing it for operation, over and above the amount required for the maintenance, improvement, and operation of the airport and for meeting all required payments on its obligations, it shall set aside the reserve for future operations, improvements, and contingencies as it shall deem proper and shall then apply the residue of the surplus, if any, to the payment of any recognized and established obligations not then due.
 (b) After all the recognized and established obligations have been paid off and discharged in full, the authority shall, at the end of each fiscal year, set aside the reserve for future operations, improvements, and contingencies as prescribed in subsection (a) of this section and then pay the residue of the surplus, if any, to the counties, municipalities, and the state in direct proportion to their financial contribution, provided that no such distribution of said residue of the surplus shall violate United States law or the terms of any deed, grant agreement, or other agreement with the United States.
A.C.A. § 14-362-122.
The above-quoted provisions clearly indicate that the permissible expenditures of the funds of regional airport authorities must be related either to "the maintenance, improvement, and operation of the airport," or to payment of the authority's obligations. Any surplus that remains after these uses are made of the authority's funds must be paid to the counties, municipalities, and the state in proportion to their financial contributions. The use of funds to pay for a dinner for certain individuals would not seem to fall within any of these permissible uses. Nevertheless, I must address the question of whether such a use of the funds would constitute a "contingency" that the board of the authority would be permitted to "deem proper," within the meaning of Section (a) of the statute. In considering this issue, it is necessary to evaluate the board's authority in light of certain constitutional provisions and principles.
The prohibition against "illegal exactions," as set forth in Article 16, § 13 of the Arkansas Constitution will bear on this issue. Despite the board's authority to make expenditures that it deems proper, the board must nevertheless work within the confines of the constitutional prohibition against illegal exactions.
This constitutional prohibition arises out of Article 16, § 13 of the Arkansas Constitution, which states:
 Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.
Ark. Const., art. 16, § 13.
The Arkansas Supreme Court has recognized that an "illegal exaction" can take two forms: (1) A misapplication of public resources; and (2) A wrongful taxation. Ghegan v. Weiss, 338 Ark. 9, 991 S.W.2d 536 (1999);Pledger v. Featherlite Precast Corp., 308 Ark. 124, 823 S.W.2d 852, cert. denied, ___ U.S. ___, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A misapplication of public resources involves the use of public resources for a private purpose.
One of the leading cases in which the Arkansas Supreme Court addressed the issue of the unlawful use of public resources for a private purpose was Chandler v. Board of Trustees, 236 Ark. 256, 365 S.W.2d 447 (1963). In that case, a taxpayer challenged the use of tax funds for the purpose of paying retirement benefits to employees of the Arkansas Education Association, which was a private organization. The court concluded that even though these employees worked primarily in jobs that benefited the public, the use of tax funds to pay their retirement benefits did not benefit the public primarily, but rather, primarily benefited the employees privately, and was therefore unlawful. In so holding, the court gave a concise statement of the law applicable to the issue of the use of public funds for a private purpose:
 No principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose. A century ago the basic doctrine was simply stated in the leading case of Brodhead v. City of Milwaukee, 19 Wis. 624: "The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute."
Chandler, 236 Ark. at 258, quoting Brodhead v. City of Milwaukee,19 Wis. 624. See also Clark v. State, 308 Ark. 84, 824, S.W.2d 345 (1992) (Brill, J., concurring); Brewer v. Hawkins, 241 Ark. 460, 408 S.W.2d 492
(1966); Samples v. Grady, 207 Ark. 724, 182 S.W.2d 875 (1944).
A primary consideration in "public funds" cases appears to be whether those who contributed the tax money at issue received the intended benefit therefrom, or whether, by contrast, the benefit was received by a private individual or entity. Although this consideration is largely a question of fact that can only be answered in light of all of the evidence that is relevant to the particular case, it is my opinion that the use of public funds to pay for dinner for certain individuals seemsprima facie to primarily benefit those individuals, rather than the public. For this reason, this use of the authority's funds could give rise to a challenge based on the constitutional prohibition against illegal exactions.
In addition, if the use of tax proceeds[1] to pay for this dinner is deemed to be remote enough from the purposes of the airport authority, the use of such tax proceeds for this purpose might also be deemed a violation of Article 16, § 11 of the Arkansas Constitution. That provisions states:
 No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose.
Ark. Const., art. 16, § 11; Bell v. Crawford, 287 Ark. 251,697 S.W.2d 910 (1985).
For these reasons, therefore, I conclude that the use of tax proceeds and other public funds collected by a regional airport authority to pay for dinner for certain individuals is, at best, questionable under the law.See also Ops. Att'y Gen. Nos. 91-411; 91-410.
Question 2 — Is the Bentonville/Bella Vista Chamber of Commerce (anon-profit organization) subject to the Freedom of Information Actrelating to the tax dollars given to it by the City of Bentonville?
It is my opinion that the Bentonville/Bella Vista Chamber of Commerce is subject to the Freedom of Information Act (FOIA) in connection with matters related to its contract with the City of Bentonville.
The Arkansas Supreme Court has consistently held that the FOIA is applicable to private entities that receive public funds and that perform a public function that would otherwise be performed by the government.See, e.g., Waterworks v. Kristen Invest. Prop., 72 Ark. App. 37,32 S.W.3d 60 (2000); City of Fayetteville v. Edmark, 304 Ark. 480,830 S.W.2d 275 (1990); Rehab. Hosp. Servs. Corp. v. Delta-Hills Health Sys.,Agency, Inc., 285 Ark. 397, 687 S.W.2d 840 (1985); North Central Ass'n ofColleges Schools v. Troutt Bros., Inc., 261 Ark. 378, 548 S.W.2d 825
(1977); A.C.A. § 25-19-103(4)(5).
The limitation on this principle is that private entities are subject to the FOIA only in connection with the particular task for which they receive public funds. Edmark, supra.
Under the circumstances that you have described, the City of Bentonville entered into a contract with the Bentonville/Bella Vista Chamber of Commerce, under the terms of which, the Chamber of Commerce agreed to provide the City with business and industrial promotion services in exchange for $20,000.00, plus an additional amount up to $5,000.00 for travel, training, and education pertaining the industrial/economic development. The contract specifically states that the City is hiring the Chamber for this purpose because the City does not have the facilities "to promote local businesses and industries or to attract outside business and industries." The function that is to be served by the Chamber of Commerce is clearly one that the City would perform for itself if it had the resources to do so.
I therefore conclude that the Chamber of Commerce, under these circumstances, is performing a function that would otherwise be performed by the city government, in exchange for public funds. Accordingly, the Chamber of Commerce is subject to the FOIA in connection with meetings and records that pertain to this particular task. Accord, Op. Att'y Gen. No. 94-023 (membership dues paid to chamber of commerce to engage in industrial development rendered chamber of commerce subject to the FOIA). See also Op. Att'y Gen. No. 2000-260.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] I am assuming, based upon the wording of your question, that the monies used to pay for the dinner did, in fact, include tax proceeds.