The Honorable Lona Horn McCastlain Prosecuting Attorney Twenty-Third Judicial District 301 N. Center, Suite 301 Lonoke, AR 72086
Dear Ms. McCastlain:
I am writing in response to your request for an opinion on the several questions regarding A.C.A. § 16-13-326(c) (Repl. 1999), which provides as follows:
 The funds derived from the collection of juvenile fees shall be used, by agreement of the juvenile division of the chancery court and the quorum court of the county, to provide services to juveniles at the discretion of the juvenile division of chancery court.
You have asked the following questions with regard to this Code provision:
 1. What qualifies as `by agreement between the chancery court and the quorum court'?
2. How would such an agreement be created?
3. What qualifies as `services' that may be provided using these funds?
 4. What is the definition of `discretion of the juvenile division of chancery court'?
5. How is that discretion to be manifested?
 6. Does the juvenile division of chancery court have the final authority on what services are provided using this money and if so, does that ultimately conflict with the provision that requires an agreement between the juvenile division of chancery court and the quorum court regarding the use of these funds?
RESPONSE
It is my opinion in response to your first question that this phrase contemplates a concurrence or mutual understanding between the juvenile division of chancery court and the quorum court with respect to the services that will be provided to juveniles with these funds. With regard to your second question, the statute does not specify any particular form of agreement or any procedures for creating such an agreement. I thus conclude that this is a matter to be decided by the juvenile judge and the quorum court. It is my opinion in response to your third question that the "services" contemplated under the statute are, generally, those relating to intake and probation. With regard to your fourth and fifth questions concerning the "discretion" of the juvenile division, it is my opinion that the intent is to give the court discretion regarding the actual provision of services. The statute does not indicate how this discretion is to be manifested. In my opinion the court would make this determination. It is my opinion in response to your last question that there must be a meeting of the minds as between the juvenile division of chancery court and the quorum court regarding the services that will be provided to juveniles with these funds. The juvenile division has final authority, however, regarding the provision of such services.
Question 1 — What qualifies as `by agreement between the chancery courtand the quorum court'?
The term "agreement," in its ordinary usage, signifies a concurrence or mutual understanding on a given proposition. See Black's Law Dictionary
62 (5th ed. 1979) (defining "agreement" as "[a] coming together of minds; a coming together in opinion or determination; the coming together in accord of two minds on a given proposition."). It is a broader term than "contract," as an agreement may lack an essential element of a contract. Id. It is therefore my opinion that the phrase "by agreement of the juvenile division of the chancery court and the quorum court of the county" in A.C.A. § 16-13-326(c) contemplates a concurrence or mutual understanding between the juvenile division and the quorum court. This is consistent with the common meaning of the term "agreement," in the absence of any contrary evidence of legislative intent. See generallyGhegan v. Weiss, 338 Ark. 9, 991 S.W.2d 536 (1999) (stating that in the absence of an ambiguity in statutory language, the words of a statute should be given their common meanings).
It is my opinion, additionally, that the "agreement" should reflect the concurrence or understanding of the juvenile division and the quorum court with respect to the services that will be provided to juveniles with these funds. This follows, in my opinion, from the statute's punctuation, bearing in mind established aids to statutory construction.See generally 82 C.J.S. § 325 (1999) (stating that a statute's plain meaning will typically heed the commands of its punctuation). It is clear from the opening phrase of § 16-13-326 (c) that "[t]he funds . . . shallbe used . . ." (Emphasis added). This requirement that the funds be used may not have been clear, in the absence of commas setting off the phrase "by agreement of the juvenile division . . . and the quorum court." Indeed, prior to a 1995 amendment, there were no commas in § 16-13-326
(c). See Acts 1994 (2nd Ex. Sess.), Nos. 61 and 62 (identical acts). With no commas, the statute might have suggested that the funds would only be used if there were an agreement between the juvenile division and the quorum court for their use. Under the so-called "last antecedent doctrine," the qualifying words "by agreement" would ordinarily be construed to apply only to the immediately preceding word or phrase (i.e., "shall be used"), and not to following words. See generally 82 C.J.S. § 333 (1999). Thus, without the commas, the statute might have been interpreted to authorize, but not require, the funds' use for services to juveniles. Moreover, under the "last antecedent doctrine,"supra, the phrase "by agreement" would arguably not have applied to the following words, "services to juveniles." Construed that way, the "agreement" would not encompass the services to be provided, and the juvenile division would have discretion with respect to the services to be provided.
With the change in punctuation, however, I believe it is clear that the funds must be used for services to juveniles pursuant to the agreement of the juvenile division and the quorum court with respect to those services. In my opinion, the purpose of the agreement is not to decide whether the funds will be used. Rather, the agreement shall address matters relating to the services to be provided.
Question 2 — How would such an agreement be created?
It is my opinion that there is no required form or procedure for the expression of the agreement. The statute is silent in this regard, and I am aware of no other law that would govern the matter. I thus conclude that the manner or method by which this agreement is expressed is a matter to be determined by the juvenile judge and the quorum court.
Question 3 — What qualifies as `services' that may be provided usingthese funds?
Although § 16-13-326 does not specify the "services," it is my opinion that when read together with the related Code sections, this term refers to those services relating to intake and probation services for juveniles. See generally City of Blytheville v. McCormick,56 Ark. App. 149, 939 S.W.2d 855 (1997) (stating the general rule of statutory construction that words in a statute will be placed beside other statutes relevant to the subject and given a meaning and effect derived from the combined whole).
As originally enacted, A.C.A. § 16-13-326 authorized the juvenile judge to charge a juvenile a fee "for probation services provided by the court." Acts 1989, No. 418, § 5. Subsequent amendments removed the term "probation." Acts 1994 (2nd Ex. Sess.), No. 61, § 3 and No. 62, § 3 (identical acts) and Acts 1995, No. 1204, § 1. The statute now states that:
 [t]he judge of the juvenile division of chancery court may charge a juvenile a fee, not to exceed twenty dollars ($20.00) per month, for services provided to juveniles by the court.
A.C.A. § 16-13-326 (a) (1).
I believe it is significant to note, however, that the statute has always included a provision for depositing the funds in "the county treasury of the county in which probation services are provided." A.C.A. § 16-13-326
(b) (1). It is also clear that the body of law containing the fee provision relates to juvenile intake as well as probation services. The original act provided a juvenile probation and intake officer for the juvenile division, and Arkansas Juvenile Code established the duties of the officers in the same legislative session. See Acts 1989, No. 273, § 7 (codified at A.C.A. § 9-27-308). Subsequent amendments have not changed the focus of these provisions. See A.C.A. §§ 16-13-326 — 331.
Reading § 16-13-326 together with the related Code sections, therefore, I conclude that the "services" that may be funded with the juvenile fees are, generally, intake and probation-related services.
Question 4 — What is the definition of `discretion of the juveniledivision of chancery court'?
This is not specifically defined in the statute. In my opinion, however, the "discretion" of the juvenile division under § 16-13-326 (c) relates to the services that are actually provided. This follows from my interpretation of the qualifying phrase "by agreement of the juvenile division . . . and the quorum court." See response to Question 1, above. As indicated above, it is my opinion that the statute contemplates an agreement between the juvenile judge and the quorum court with respect to the services that will be provided to juveniles with the use of these funds. The juvenile judge is the one, however, who oversees the services. See, e.g., A.C.A. §§ 16-13-327 and — 328 (probation and intake officers serve at the pleasure of the judge of the juvenile division). It is therefore my opinion that the judge is the one who decides what services are actually provided, consistent with the "agreement."
Question 5 — How is that discretion manifested?
This is for the court to determine, as the statute is silent.
Question 6 — Does the juvenile division of chancery court have the finalauthority on what services are provided using this money and if so, doesthat ultimately conflict with the provision that requires an agreementbetween the juvenile division of chancery court and the quorum courtregarding the use of these funds?
See responses above. The juvenile judge has final authority in the sense that he or she oversees the services and ultimately decides what services will be provided, consistent with the agreement. It is my opinion that the "agreement" goes to the services, generally. This might include, for instance, the number of juvenile probation and/or intake officers (see
A.C.A. §§ 16-13-327 and — 328) and the types of services that will be provided. I thus perceive no conflict between the juvenile division's discretionary authority with respect to the actual provision of services and the requirement that there be an agreement regarding the services to be provided with these funds.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh