Denise WILSON  *v.*  STATE of Arkansas

CR 05-788                                         222 S.W.3d 171

Supreme Court of Arkansas
Opinion delivered January 12, 2006

*Teri Chambers*, Arkansas Public Defender Commission, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Denise Wilson ("Wilson") and two of her sons, Charles Stevenson and Alphonso Wilson, were charged with capital murder for the

murder of their landlord, William Cunningham. Wilson was convicted of capital murder and sentenced to life imprisonment. She now brings an appeal claiming that the trial court erred in refusing to give a non-model jury instruction and in denying her motions to suppress. We affirm.

The facts in this case are not disputed on appeal. On January 14, 2004, ninety-two-year old William Cunningham was found dead in the kitchen of his home. Police investigated the case as a homicide. An investigator on the case first made contact with Wilson during a canvass of the neighborhood. She originally identified herself as "Stephanie Stevenson" and told the investigator of two unknown individuals she had seen in the area on the night of Mr. Cunningham's murder. On January 19, the investigator spoke with Wilson's neighbor, Jackie Bunting, who witnessed an argument on the day of Mr. Cunningham's death between Mr. Cunningham, Wilson, and her two sons. On January 20, the investigator returned to Wilson's home and asked her and her son Charles to accompany him to the Sheriff's department for questioning. Wilson agreed to go and commented that she was glad to see the investigator because she believed her other son Alphonso might have been involved in the murder. Later that day, Wilson gave two taped statements. In the first statement, she said that her son Charles told her that he and Alphonso had killed Mr. Cunningham.

That afternoon, due to Wilson's statement that her sons were involved in Mr. Cunningham's murder, the police conducted a search of Wilson's home and the surrounding property. The search revealed a bag of clothing in the woods near the Cunningham house. One of the items found in the bag was a small pair of shoes — shoes too small to be worn by Wilson's sons. Moreover, the search of her house revealed papers with the name "Denise Wilson" on them. Until this point in the investigation, the police believed Wilson to be "Stephanie Stevenson."

Later that day, the police officers confronted Wilson about using the name "Stephanie Stevenson." She admitted that her name was "Denise Wilson," at which point *Miranda* warnings were given to her. She then gave a second statement. In that statement, she said she was part of a plan to rob Mr. Cunningham, but that she had no intention of killing him. According to Wilson, her part in the intended robbery was only to act as the look-out. She also denied participating in the acts that caused Mr. Cunningham's death.

Prior to trial, Wilson moved to suppress all of the statements she made to law enforcement officers. Those motions were denied by the circuit court, and the statements were introduced into evidence at trial. The circuit court also denied Wilson's request that the court give a non-model jury instruction based on Ark. Code Ann. § 5-2-406 (Repl. 1997). The jury found Wilson guilty of capital murder, and she was sentenced to life imprisonment. Wilson now appeals the judgment of conviction. We have jurisdiction of this case as it is a criminal appeal where the sentence of life imprisonment has been imposed. Ark. Sup. Ct. R. 1-2(a)(2) (2005).

For her first point on appeal, Wilson claims that the circuit court erred when it declined to give a non-model jury instruction on accomplice liability that incorporated the provisions of Ark. Code Ann. § 5-2-406. Instead, the circuit court instructed the jury on accomplice liability in accordance with the Arkansas Model Jury Instructions – Criminal:

> AMI Crim. 2d 401
>
> In this case the state does not contend that Denise Wilson acted alone in the commission of the offense of capital murder. A person is criminally responsible for the conduct of another person when he is an accomplice in the commission of an offense.
>
> An accomplice is one who directly participates in the commission of an offense or who, with the purpose of promoting or facilitating the commissions of an offense:
>
> Solicits, advises, encourages, or coerces the other person to commit an offense; or
>
> Aids, agrees to aid, or attempts to aid the other person in planning or committing an offense.
>
> "Purpose." A person acts with purpose with respect to this conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.
>
> AMI Crim. 2d 404
>
> Mere presence, acquiescence, silence or knowledge that a crime is being committed in the absence of a legal duty to act, is not

sufficient to make one an accomplice. Therefore if you find that Denise Wilson was only present while a crime was being committed and did not have a legal duty to act, then she is not an accomplice.

In addition to the above-cited model jury instructions, Wilson proffered Ark. Code Ann. § 5-2-406 as a non-model jury instruction. Section 5-2-406 provides:

When two (2) or more persons are criminally liable for an offense of which there are different degrees, each person shall be liable only for the degree of the offense that is consistent with his own mental culpability or with his own accountability for an aggravating factor or circumstance.

Our case law is clear that a party is entitled to a jury instruction when it is a correct statement of law and when there is some basis in the evidence to support giving the instruction. *Jones v. State,* 336 Ark. 191, 984 S.W.2d 432 (1999). Moreover, a trial court is required to give a jury instruction if there is some evidence to support it. *Id.* A trial court should not use a non-model instruction unless it finds that the model instruction does not accurately reflect the law. *Id.*

One of the issues addressed by this court in *Jones v. State, supra,* is similar to the first point of error raised here. In the *Jones* case, the defendant proffered section 5-2-406 as a non-model jury instruction to be substituted in place of Arkansas Model Jury Instruction — Criminal 401. The trial court refused to give the requested non-model jury instruction. In affirming the trial court's decision, we stated:

This court has previously held that although [Ark. Code Ann. § 5-2-406] is a correct statement of the law, it is not a model jury instruction and, further, that it is unnecessary to give it when its substance is covered by other instructions. *See Ventress v. State,* 303 Ark. 194, 794 S.W.2d 619 (1990) (citing *Wallace v. State,* 270 Ark. 17, 603 S.W.2d 399 (1980)); *Henderson v. State,* 284 Ark. 493, 684 S.W.2d 231 (1985).

We do not view [section 5-2-406] as being relevant to this case. Section 5-2-406 addresses the situation where two or more defendants are charged and tried together and where the degree of each defendant's culpability may differ. *See, e.g., Blann v. State,* 15 Ark. App. 364, 695 S.W.2d 382 (1985) (no error in finding one

codefendant guilty of being an accomplice to a lesser included offense while holding another guilty of the greater offense). Haire and Jones were not tried together and so far as we know the liability of Haire has not been decided.

*Jones v. State*, 336 Ark. at 205, 984 S.W.2d at 439. Thus, we have limited Ark. Code Ann. § 5-2-406's application to instances where two or more defendants are being tried together or where the criminal liability of the other codefendants has previously been decided. *See Jones v. State, supra.*

Here, Wilson was tried alone, and as far as we know, the liability of her two sons has not been decided. Accordingly, under our holding in the *Jones* case, the circuit court correctly refused to give the proffered non-model jury instruction based on Ark. Code Ann. § 5-2-406.[1]

▪ Despite this court's decisions in *Jones v. State, supra,* and *Branstetter v. State, supra,* Wilson nonetheless cites the case of *Bosnick v. State,* 248 Ark. 846, 454 S.W.2d 311 (1970), as authority for the proposition that section 5-2-406 may be given as a jury instruction where codefendants are not tried together. In the *Bosnick* case, Bosnick waited in the car while his codefendants robbed a store. The codefendants killed a police officer who had arrived at the scene of the robbery. The trial court refused to instruct the jury on any lesser degrees of homicide, and Bosnick was convicted of premeditated first-degree murder. We held that, under the circumstances, the trial court erred by failing to instruct on lesser offenses so that the jury could determine the degree of Bosnick's culpability with respect to the murder. *Id.* at 852, 454 S.W.2d at 315. Notwithstanding Wilson's argument to the contrary, *Bosnick* does not stand for the proposition that section 5-2-406 applies where codefendants are tried separately; rather, that case simply recognizes Arkansas' departure from the model penal code, whereby an accomplice is liable to the same extent as his or her principal. In Arkansas, an accomplice is entitled to a jury instruction on the lesser-included offenses, allowing the jury to judge an accomplice's mental state separately from that of his or

---

[1] Although Wilson suggests that *Jones* is distinguishable because that case involved a "charge of capital felony murder, not premeditated and deliberated murder," we have previously held that, even when the charge is capital murder, Section 5-2-406 is not relevant where the defendant is tried alone. *See Branstetter v. State,* 346 Ark. 62, 57 S.W.3d 105 (2001).

her principal. *Bosnick v. State, supra.* Yet, section 5-2-406 is not applicable until a court determines whether "two (2) or more persons are criminally liable," which necessarily means that this statute is not applicable until the criminal liability of the accomplice codefendants has been decided. Accordingly, we conclude that because Wilson was tried alone and because the criminal liability of Charles and Alphonso had not been determined as of the date of her trial, the circuit court correctly refused to give Ark. Code Ann. § 5-2-406 as a non-model jury instruction.

For her second and final point on appeal, Wilson argues that the circuit court erred in denying her motions to suppress the statements she made to law enforcement officers during their investigation of Mr. Cunningham's death. Specifically, prior to trial, Wilson filed two motions to suppress the statements. Subsequent to the circuit court's denial of those motions, Wilson filed a motion to reconsider. The circuit court orally denied the motion to reconsider, and the statements were later admitted at trial.

As set out earlier in this opinion, Wilson's first statement was taken when a law enforcement officer approached her during an initial canvass of the neighborhood. In that statement, she originally identified herself as "Stephanie Stevenson" and told the investigator about two unknown individuals she had seen in the area on the night of Mr. Cunningham's murder. The admission of this statement has not been challenged on appeal. On January 20, the investigator returned to Wilson's home and asked her and her son, Charles, to accompany him to the Sheriff's office for questioning. Wilson agreed to go and commented that she was glad to see the investigator because she believed her other son, Alphonso, might have been involved in the murder. Later that day, Wilson gave two additional statements. In the first statement, she said that her son, Charles, told her that he and Alphonso, her other son, had killed Mr. Cunningham. After a search of the home and the surrounding area, the police confronted Wilson about using the name "Stephanie Stevenson." She admitted that her name was in fact "Denise Wilson." Thereafter, *Miranda* warnings were given to her. Wilson then proceeded to give a final statement. In that statement, she acknowledged that she was part of a plan to rob Mr. Cunningham, but that she had no intention of killing him. According to Wilson, her part in the intended robbery was only to act as the look-out. She denied any involvement in the acts that caused Mr. Cunningham's death.

On appeal, Wilson advances three reasons why the circuit court should have suppressed the statements made on January 20:

First, officers failed to advise her, when they went to her home, that she did not have to speak with them, and thus violated the principles enunciated in *State v. Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004). Second, Rule 2.2 of the Arkansas Rules of Criminal Procedure was violated when officers implied that [Wilson] would have to speak with them at some point, if not at that time. . . . Third, [the last statement] should be suppressed because in failing to advise [Wilson] of *Miranda* warnings before asking any questions once he determined that she was a suspect, Lt. Dixon lured [Wilson] into making an unwarned admission followed by a warned admission in violation of *Missouri v. Seibert*, 542 U.S. 600 (2004).

In reviewing a trial court's refusal to suppress a confession, we make an independent determination based on the totality of the circumstances. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). The ruling will only be reversed if it is clearly against the preponderance of the evidence. *Id.* Any conflict in the testimony of different witnesses is for the trial court to resolve. *Id.* A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Id.* In order to determine whether a waiver of *Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception.[2] *Id.*

In determining whether a confession was voluntary, this court considers the following factors: age, education of the accused, lack of advice of constitutional rights, length of detention, the repeated and prolonged nature of the questioning, or the use of physical punishment. *Standridge v. State*, 357 Ark. 105, 161 S.W.3d 815 (2004). It must be demonstrated that the activity of the police had a particular effect upon the accused. *Id.* There must be an essential link between coercive activity of the State, on the one

---

[2] We recognize that the question of voluntariness and the question of knowing and intelligent waiver are distinct and separate inquiries. *See Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001); *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997); *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997). At issue here is the voluntariness of Wilson's statements, not whether Wilson knowingly and intelligently waived her constitutional rights.

hand, and a resulting confession by a defendant, on the other. *Id.* Thus, courts cannot speculate as to a defendant's motivation for speaking or acting as he did without some sort of indication from the defendant himself. *Id.* The nexus between any conduct of the police, coercive or otherwise, and the statement given by the accused, must be established to consider the remedies that flow from the *Miranda* warnings. *Id.* The proper inquiry is whether the defendant's will has been overborne or her capacity for self-determination critically impaired. *Id. See also Schneckloth v. Busta-monte,* 412 U.S. 218, 225 (1973).

■ Beginning with the first subpoint of her suppression argument, Wilson suggests that our recent decision in *State v. Brown, supra,* is authority for the proposition that the police were prohibited from approaching her at her home to discuss the investigation of Mr. Cunningham's murder without properly advising her that she did not have to talk. In *Brown, supra,* we described the "knock and talk" procedure as follows:

> The procedure has become fashionable as an alternative to obtaining a search warrant when police officers do not have sufficient probable cause to obtain a search warrant. What generally occurs is that several law enforcement officers accost a home dweller on the doorstep of his or her home and request consent to search that home. If an oral consent is given, the search proceeds. What is found by police officers may then form the basis for probable cause to obtain a search warrant and result in the subsequent seizure of contraband. It is the intimidation effect of multiple police officers appearing on a home dweller's doorstep, sometimes in uniform and armed, and requesting consent to search without advising the home dweller of his or her right to refuse consent that presents the constitutional problem.

*State v. Brown,* 356 Ark. at 466, 156 S.W.3d at 726. The *Brown* court held that the Arkansas Constitution requires law enforcement officers to advise home dwellers of their right to refuse consent to search. *Id.* Clearly, in this case, the investigator did not return to Wilson's home on January 20 for the purpose of requesting her consent to search the home; rather, he went to her house for the purpose of asking her and her son to go to the sheriff's office for questioning. In fact, no search of Wilson's home occurred until a search warrant was obtained; that is, the police officers did not conduct a search of her home until they had sufficient probable cause to obtain a search warrant. Under these circumstances, we conclude that *State v. Brown, supra,* is inapposite.

In conjunction with her *Brown* argument, Wilson claims that the police violated Rule 2.2 of the Arkansas Rules of Criminal Procedure. Specifically, she asserts that the officers violated Rule 2.2(b) when they failed to advise her that "she was not legally obligated to talk to the officers at all." Rule 2.2 states:

> (a) A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of the crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

> (b) In making a request pursuant to this rule, no law enforcement officer shall indicate that a person is legally obligated to furnish information or to otherwise cooperate if no such legal obligation exists. Compliance with the request for information or other cooperation hereunder shall not be regarded as involuntary or coerced solely on the ground that such a request was made by a law enforcement officer.

Ark. R. Crim. P. 2.2 (2005). Under Rule 2.2, we have stated that an officer may approach a citizen much in the same way a citizen may approach another citizen and request aid or information. *Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002). Our case law has consistently held that Rule 2.2 authorizes an officer to request information or cooperation from citizens where the approach of the citizen does not rise to the level of being a seizure and where the information or cooperation sought is in aid of an investigation or the prevention of crime. *Id.*

With regard to an officer's request that a person go to or remain at the police station for questioning, Ark. R. Crim. P. 2.3 provides as follows:

> If a law enforcement officer acting pursuant to this rule requests any person to come to or remain at a police station, prosecuting attorney's office or other similar place, he shall take such steps as are reasonable to make clear that there is no legal obligation to comply with such a request.

Ark. R. Crim. P. 2.3 (2005). In interpreting Rule 2.3, we follow the Supreme Court's holding in *United States v. Mendenhall*, 446 U.S. 544 (1980), that the question of whether or not one's consent to accom-

pany police officers is voluntary or the product of duress or coercion is to be determined by the totality of the circumstances. *Shields v. State,* 348 Ark. 7, 70 S.W.3d 392 (2002). In that same vein, we have recently reiterated our statement in the *Shields* case that "Rule 2.3 does not require an explicit statement that one is not required to accompany the police; rather, the police only need to take such steps as are 'reasonable to make clear that there is no legal obligation to comply' with the request to come to the police station." *Anderson v. State,* 357 Ark. 180, 197, 163 S.W.3d 333, 341 (2004)(citing *Shields v. State,* 348 Ark. 7, 14, 70 S.W.3d 392, 395 (2002)).

■■ Here, the testimony offered at the suppression hearing supports the conclusion that the officers made it reasonably clear to Wilson that she was not "legally obligated to furnish information or otherwise cooperate." The officers did not display weapons or otherwise restrain Wilson. In fact, they made it clear she could go to the sheriff's office at her own convenience. Just as Rule 2.3 does not require an explicit warning by law enforcement that one is not required to accompany the police, the plain language of Rule 2.2 does not include a requirement that law enforcement give a warning that one is not legally obligated to furnish information. Likewise, the question of whether one's consent to furnish information is voluntary, or the product of duress or coercion, must be determined under the same standard as that used for determining voluntariness under Rule 2.3 — the totality of the circumstances. *Anderson v. State, supra*; *Shields v. State, supra.*

Finally, Wilson states that the police violated the principle set forth by the United States Supreme Court in *Missouri v. Seibert,* 542 U.S. 600 (2004).[3] In that case, the interrogating officer made a conscious decision to resort to an interrogation technique in which he would first elicit a prewarning statement from the defendant, then give the *Miranda* warnings, and then obtain a second statement that would be " 'largely a repeat of information . . . obtained' prior to the warning." *Missouri v. Seibert,* 543 U.S. at

---

[3] The State is mistaken in contending that this argument was not preserved for appeal and that, even if it was preserved, the trial court did not issue a ruling on this issue. Wilson raised *Seibert* in a motion to reconsider the motion to suppress, and the circuit court denied the motion orally.

606. The Supreme Court concluded that in such circumstances a midstream recitation of warnings after interrogation and unwarned confession rendered the *Miranda* warnings ineffective. *Id.* at 604. More specifically, as explained by the Supreme Court, "[t]hese circumstances must be seen as challenging the comprehensibility and efficacy of the *Miranda* warnings to the point that a reasonable person in the suspect's shoes would not have understood them to convey a message that she retained a choice about continuing to talk." *Id.* at 617.

The facts in this appeal are significantly different from the facts in *Missouri v. Seibert, supra.* In *Seibert,* the police elicited a confession, followed with the *Miranda* warnings, and then obtained a second statement from the suspect by covering the same ground a second time. Here, the statements given by Wilson before she was *Mirandized* did not implicate her in the murder of Mr. Cunningham; rather, her prewarning statements implicated her sons as suspects in the murder. It was only after the police confirmed her true identity as a result of information discovered during the search of her home and the surrounding area that Wilson became a suspect in the murder of Mr. Cunningham. At that point, the police *Mirandized* her, and she proceeded to give her first incriminating statement — that she was part of a plan to rob Mr. Cunningham, but that she had no intention of killing him.[4] These facts differ markedly from *Seibert,* where the defendant incriminated herself prior to receiving *Miranda* warnings, and the second statement was merely an attempt to elicit those *same* statements lawfully. Accordingly, *Seibert* does not support Wilson's argument that her postwarning statement should have been suppressed. We therefore affirm the circuit court's denial of her motions to suppress.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by

---

[4] In the transcript of the last statement, Wilson admits that *Miranda* warnings were given before she made the incriminating statement:

Officer: [Denise] After I, After I found out about that you told us what your real name was, I told you I wanted to talk to you about this homicide a little bit further, and I read you your rights is that correct?

Wilson: Yes Sir.

either party that were decided adversely to Wilson, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed.

HANNAH, C.J., concurs.

JIM HANNAH, Chief Justice, concurring. While I concur that this case should be affirmed, I write separately to set out my analysis on the application of Ark. Code Ann. § 5-2-406 (Repl. 1997). Denise Wilson was charged with the capital murder of William Cunningham. Her two sons, Charles Stevenson and Alphonso Shuntly Wilson, were also charged with the capital murder of William Cunningham. The cases against Wilson's sons were to be tried separately after her trial.

At trial, the State alleged that Wilson and her two sons went to Cunningham's house with the intent of killing him, that they arrived wearing gloves, and that when Cunningham let them in and turned his back, he was struck in the head with a hammer and cut with a knife. The State did not identify who struck the blows or who cut Cunningham.

The jury was instructed on capital murder, first-degree murder, second-degree murder, and accomplice liability. Under accomplice liability, a person may commit an offense by his own conduct or by that of another person. Ark. Code Ann. § 5-2-401 (Repl. 1997). There is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Jefferson v. State*, 359 Ark. 454, 198 S.W.3d 527 (2004). A person is an accomplice when he or she solicits, advises, encourages, coerces, aids, agrees to aid, or attempts to aid in the commission of an offense. Ark. Code Ann. § 5-2-403(b)(1-2) (Repl. 1997).

However, when causing a particular result is an element of an offense charged under accomplice liability, the accomplice must act with the culpability required for the commission of the offense. Ark. Code Ann. § 5-2-403(b) (Repl. 1997). Causing the death of a person, as in murder or manslaughter, is a particular result. *See Fight v. State*, 314 Ark. 438, 863 S.W.2d 800 (1993). Capital murder as charged in this case requires premeditated and deliberated purpose in causing the death of another person. Ark. Code

Ann. § 5-10-102(a)(4) (Supp. 2003). Thus, in order to convict Wilson of capital murder under accomplice liability, the State had to prove that with the premeditated and deliberated intent that Cunningham be killed Wilson solicited or aided others who killed Cunningham. There was substantial evidence to show premeditation and deliberation by Wilson, such as Wilson's arriving at Cunningham's house wearing gloves in apparent preparation for the murder. Had the evidence shown a less culpable mental state than premeditation and deliberation, the jury could have found her liable of a homicide of a lesser degree. Allowing the jury to decide the matter is consistent with this court's holding in *Bosnick v. State*, 248 Ark. 846, 850, 454 S.W.2d 311, 314 (1970), where, as the majority notes, this court stated that "the jury may assign degrees of guilt among the conspirators in accordance with their respective culpability." This principle was codified as Ark. Stat. Ann. § 41-306 (Repl. 1977) by Act 280 of 1975 and entitled, "Criminal liability for conduct of another-multiple convictions-different degrees." This section is currently found at Ark. Code Ann. 5-2-406 (Repl. 1997), and provides that:

> When two (2) or more persons are criminally liable for an offense of which there are different degrees, each person shall be liable only for the degree of the offense that is consistent with his own mental culpability or with his own accountability for an aggravating fact or circumstance.

The original commentary to section 41-306 provided:

> This section provides that where an actor is sought to be subjected to accomplice liability for conduct of another, and the conduct alleged may give rise to differing degrees of the same offense depending on an attendant culpable mental state, the accomplice actor is subject only to that liability consistent with his own culpable mental state.

It is thus clear that as Wilson alleges, the finder of fact must make a determination of the mental state of the person accused under accomplice liability. However, she asserts further that only an instruction based on Ark. Code Ann. § 5-2-406 will satisfy this requirement. She is mistaken.

The circuit court first instructed the jury on capital murder, stating that it must find "that with premeditated and deliberated purpose of causing the death of William Cunningham, Denise

Wilson, or an accomplice, caused the death of William Cunningham." Instructing that Wilson could be criminally liable based on the mental states of her accomplices was in error. An instruction based on Ark. Code Ann. § 5-2-406 might have cured the error by telling the jury Wilson was only liable under her own mental state. However, the circuit court corrected its error and instructed the jury anew, stating that on capital murder it must find, "that with premeditated and deliberated purpose of causing the death of William Cunningham, Denise Wilson caused the death of William Cunningham." Thus, the jury was specifically asked to determine whether Wilson had the mental state necessary for a conviction of capital murder. The model instructions accurately stated the law and resort to a special instruction based on Ark. Code Ann. § 5-2-406 would have been unnecessary and error. *Jackson v. State*, 359 Ark. 297, 197 S.W.3d 468 (2004).