Neal Edward JESTER *v.* STATE of Arkansas

CR 05-1231                                    239 S.W.3d 484

Supreme Court of Arkansas
Opinion delivered September 21, 2006

---

*The Cortinez Law Firm*, by: *Robert R. Cortinez, Sr.*, and *Robert R. Cortinez, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. In the fall of 2002 and the spring of 2003, Appellant Neal Jester (Jester) cut and thinned timber from a 300-acre tract of land that was owned by Universal Leasing Corporation (Universal). Although Jester claimed that, at the time, he believed that he was acting under the authorization of Rob Wilson, the owner of Universal, a jury convicted Jester of first-degree criminal mischief. He was sentenced to pay $10,500 in fines and $180,000 in restitution. Jester now raises five points for reversal. We affirm his conviction.

For his first point on appeal, Jester claims that the circuit court erred in failing to grant his motion for directed verdict at the close of the prosecution's case in chief. We treat an appeal from the denial of a motion for directed verdict as a challenge to the

sufficiency of the evidence. Moreover, we must consider sufficiency challenges first in order to protect Jester's rights against double jeopardy. *George v. State*, 356 Ark. 345, 350, 151 S.W.3d 770, 772 (2004). When reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). We will affirm a conviction if substantial evidence exists to support it. *Id.*

In Arkansas, a person is guilty of criminal mischief in the first degree "if he or she purposely and without legal justification destroys or causes damage to . . . [a]ny property of another." *See* Ark. Code Ann. § 5-38-203 (Supp. 2003). Here, Jester argues that only speculation and conjecture could allow the jury to conclude that he had the requisite *mens rea* to be found guilty of criminal mischief. We disagree.

The facts reveal that Rob Wilson was set to inherit 300 acres of woodlands after his mother passed away in May of 2002. In October of 2002, Jester approached Wilson and asked if the land was for sale. Wilson told Jester that his mother's estate was not final, but that he would consider selling the property to Jester when that time came. In subsequent conversations, Wilson gave Jester permission to deer hunt on the land and authorized Jester to construct a small hunting camp.

At one point in time, Jester informed Wilson that there were a large number of pine beetles on the property and that he was losing a lot of trees. According to Jester, Wilson told him to "go ahead and do what you think needs to be done. Treat it like your own." After this conversation, Jester used a bulldozer to make roads throughout the property and then began to harvest the trees. During deer season, Jester stopped logging so that he and his family could hunt and socialize around the deer camp. Once deer season was over, however, Jester finished harvesting the timber. Overall, Jester contends that he treated the property as his own because Wilson gave him permission to do so. Apparently, Jester understood that he would purchase the property as soon as Wilson received it from his mother's estate. According to Jester, Wilson said, "If you want it, Neal, it's yours."

Ultimately, Wilson put the land up for sale for $330,000. While the property was on the market, Brady Auld, a certified forester, inspected the 300 acres and discovered that a very large percentage of the property had been recently logged. Auld notified

Wilson of his findings. In response, Wilson hired Auld to conduct a damage assessment and an investigation to determine who was responsible for cutting the timber without Wilson's permission.

Wilson also lodged a formal complaint with the Arkansas Forestry Commission. John Murphy, an investigator with the Commission, examined the property and determined that the entire 300 acres had been cut over. In addition, Wilson found a handwritten "no trespassing" sign placed on the property — on the reverse was a sign for Jester Timber Company.

Other witnesses gave testimony regarding the timber's removal. Cathy Dean, an adjoining land owner, testified that Jester approached her in the fall of 2002, and he asked permission to use her private road in order to set up a hunting club. Dean and her husband, Jerry, denied his request. However, later that winter, Jester told the Deans that he planned on buying the Wilson property and again asked for permission to use the Deans' private road to haul logs. This time, the Deans agreed.

Next, Donald Fry, another neighboring landowner, testified that he was approached by a man who gave him a card that read Jester Timber Company. The man asked if he could use Fry's private road to haul timber out of the area for two or three days. Fry agreed so long as he fixed the road once he was done. According to Fry, the hauling lasted approximately 10 days to two weeks, and the loggers never repaired the road.

Finally, Joe Milam, another adjoining land owner, testified that he gave Jester permission to go through his property to get the timber. Milam was aware that Wilson owned the property, but, when asked, Jester said that he was going to buy it. Jester hauled timber through Milam's property for approximately three to four weeks.

In December of 2002, Jester discovered that Wilson was "pursuing him." In response, Jester contacted Wilson, confessed to cutting the timber, and attempted to negotiate a deal. When asked why he cut the timber, Jester said that he planned on buying the land, so he went ahead and cut the timber. Jester then asked Wilson how much he wanted for the land, and Wilson replied $330,000, the amount of the asking price. Jester responded by hanging up his telephone.

Later on, Jester sent Wilson a settlement offer for $180,000 in an attempt to resolve the dispute and avoid prosecution; Wilson

refused. Ultimately, Jester was charged and convicted of first-degree criminal mischief for the unauthorized logging of Wilson's property.

It is undisputed that Jester cut the timber off Wilson's property, but Wilson denied he had ever given Jester permission to remove the timber from his land:

> COUNSEL: Had you ever given Neal Jester any indication by mouth, by paperwork, by contract that he had any authority to cut any timber on that property?

> WILSON: No, sir. Timber never was brought up in any of his phone calls. Just the purchase of the property.

In response, Jester contends that Wilson consented to his actions when he told Jester to "treat the land as if it were your own." According to Jester, he took Wilson's statement to mean that he had *carte blanche* permission to strip the entire 300-acre tract of its most valuable asset, the timber.

This court has held that it is within the province of the jury to resolve the issue of the credibility of witnesses. *Branscum v. State*, 345 Ark. 21, 43 S.W.3d 148 (2001). Moreover, a defendant's improbable explanation of suspicious circumstances may be admissible as proof of guilt. *Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003). Simply put, the jury was not obligated to believe that Jester was acting under — what Jester believed was — Wilson's consent. The jury's verdict is supported by substantial evidence that Jester purposely caused damage to the property without Wilson's consent, thus, the circuit court did not err in denying Jester's motion for a directed verdict.

For his second point on appeal, Jester, once again, challenges the sufficiency of the evidence. This time, Jester claims that there was insufficient evidence to support a finding that Wilson was entitled to $180,000 in restitution. It is this court's job to determine if there is substantial evidence to support this figure, *Cluck, supra*, and there is.

To begin, the goal of restitution is to make a victim whole. *See Hampton v. State*, 357 Ark. 473, 183 S.W.3d 148 (2004). In this case, the amount of restitution should accurately reflect the amount of economic loss that Wilson suffered as a result of Jester's unauthorized logging. Put another way, the restitution should

represent the value of the trees as they stood on the property, before they were cut down and before they were transported to the mill.

While there were conflicting figures presented to the jury, there is substantial evidence to support a restitution award of $180,000. Specifically, Wilson estimated his timber loss to be about $180,000 in his complaint that he filed with the Arkansas Forestry Commission, which complaint was introduced into evidence at trial. In addition, Wilson's expert, Auld, estimated that the remaining property value was worth $150,000, at the high end. That amount deducted from Wilson's original asking price of $330,000 results in $180,000. Finally, Jester himself offered Wilson $180,000 for the property in hopes to settle the dispute. This offer indicates that Jester, too, considered $180,000 to be a fair value amount for the remaining property. In light of this evidence, we must affirm Jester's second point on appeal.

For his third point on appeal, Jester sets out four sub-arguments in support of his claim that the criminal mischief statute is unconstitutional as applied to timber cutting cases. The statute in question, Ark. Code Ann. § 5-38-203 (Supp. 2003), provides as follows:

> (a) A person commits the offense of criminal mischief in the first degree if he or she purposely and without legal justification destroys or causes damage to:
>
> (1) Any property of another; or
>
> (2) Any property, whether his or her own or that of another, for the purpose of collecting any insurance therefor.
>
> (b) In actions under this section involving cutting and removing timber from the property of another, the failure to obtain the survey as required by § 15-32-101 or the purposeful misrepresentation of the ownership or origin of the timber shall create a presumption of purpose to commit the offense of criminal mischief in the first degree.
>
> (c) Criminal mischief in the first degree is a Class C felony if the amount of actual damage is five hundred dollars ($500) or more. Otherwise, it is a Class A misdemeanor.
>
> (d) In actions under this section involving cutting and removing timber from the property of another, there shall be imposed

inaddition to the penalty in subsection (c) of this section a fine of not more than two (2) times the value of the timber destroyed or damaged; provided, however, that in addition to the above, the court can require the defendant to make restitution to the owner of the timber.

In addition, the statute governing the survey requirement, Ark. Code Ann. § 15-32-101 (Repl. 2003), provides in pertinent part:

(a) Any person who desires to cut and remove any timber from any land in this state, unless the land has been surveyed and the boundaries thereof ascertained and known, before cutting and removing the timber, the person shall:

(1) Cause the land to be surveyed and the metes and bounds of the land marked and plainly established;

(2) Rely in good faith on an existing marked line or established corners; or

(3) Acquire a document signed by the landowner selling the timber and signed by the adjoining landowners, indicating that the landowners agree on the location of the boundary.

. . . .

(d) Any person who shall be found guilty of a violation of the provisions of this section shall be deemed to have committed a misdemeanor and shall be fined, for each offense, in any sum not less than twenty-five dollars ($25.00) nor more than three hundred dollars ($300) and may be imprisoned in the county jail not more than six (6) months.

This court strictly construes criminal statutes and resolves any doubts in favor of the defendant. *Graham v. State*, 314 Ark. 152, 861 S.W.2d 299 (1993). However, we also adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. *State v. Havens*, 337 Ark. 161, 987 S.W.2d 686 (1999). The first rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. Additionally, statutes relating to the same subject must be construed together and in harmony, if possible. *Id.*

Jester's first constitutional sub-argument contends that there is a conflict between the two above-quoted statutes. Specifically, Jester points out that under the survey statute, § 15-32-101,

an individual who cuts timber without complying with the survey requirements may be charged with a misdemeanor, fined no more than $300, and sentenced to no more than six months in jail. On the contrary, Jester submits that an individual who violates the criminal mischief statute, § 5-38-201, can be charged with a felony and expose himself to much harsher punishment. According to Jester, the exact same conduct would be a misdemeanor under one statute, but constitute a felony under another statute. In other words, Jester claims that he cannot be constitutionally charged with, and convicted for, a felony offense if the same conduct additionally would constitute a misdemeanor offense.

In direct conflict to Jester's argument, this court has repeatedly held that when two punishment statutes exist, a court is not prevented from using the more stringent provision. *Hagar v. State*, 341 Ark. 633, 19 S.W.3d 16 (2000); *Russell v. State*, 295 Ark. 619, 751 S.W.2d 334 (1988). Because the circuit court was not prevented from using the more stringent provision, Jester's first sub-argument must fail.

Jester, in his second constitutional sub-argument, submits § 5-38-203(c) is unconstitutionally void for vagueness because it does not specify a penalty. To the contrary, § 5-38-203(c) specifically states, "Criminal mischief in the first degree is a Class C felony if the amount of actual damage is five hundred dollars ($500) or more." Accordingly, section 203(c)'s use of the term "Class C felony" refers to §§ 5-4-401(a)(4) (Repl. 1997)[1] and 5-4-201(a)(2) (Repl. 1997),[2] which set out the punishment parameters for the various classes of felony convictions. In short, § 5-38-203(c) specifies a penalty through its citation to §§ 5-4-401 and 5-4-201. Thus, Jester's second constitutional argument must fail.

For his third constitutional sub-argument, Jester argues that § 5-38-203(c) unconstitutionally denies him the right to a trial by jury on one or more facts because it gives the trial court, and not the jury, the power to impose restitution. Specifically, Jester argues

---

[1] Arkansas Code Annotated section 5-4-401(a)(4) provides that "[a] defendant convicted of a felony shall receive a determinate sentence according to the following limitations ... For a Class C felony, the sentence shall be not less than three (3) years nor more than ten (10) years."

[2] Arkansas Code Annotated section 5-4-201(a)(2) provides that "[a] defendant convicted of a felony may be sentenced to pay a fine ... Not exceeding ten thousand dollars ($10,000) if the conviction is of a Class C or Class D felony."

that "the statute suggests that the court has the discretion to establish the amount of restitution despite the fact that this is a criminal trial and the defendant has the absolute right to have the jury decide all issues of fact."

In *Ghegan v. Weiss*, 338 Ark. 9, 14-15, 991 S.W.2d 536, 539 (1999), this court held the following:

> [A] litigant has standing to challenge the constitutionality of a statute if the law is unconstitutional as applied to that particular litigant. The general rule is that one must have suffered injury or belong to a class that is prejudiced in order to have standing to challenge the validity of a law. Stated differently, plaintiffs must show that the questioned act has a prejudicial impact on them.

*Id.* (citations omitted). In the present case, Jester had a jury, not a judge, decide the amount of restitution that should be imposed upon him. Therefore, because he could not show a prejudicial impact under the reasoning in *Ghegan, supra,* Jester had no standing to challenge the constitutionality of § 5-38-203(c).

Jester's fourth and final constitutional sub-argument claims that § 5-38-203 is unconstitutionally void for vagueness because "it does not set forth all of the required standards for finding the defendant guilty of specific acts which constitute a crime." Section 5-38-203's plain language reveals otherwise. As noted earlier, § 5-38-203 provides in pertinent part that "[a] person commits the offense of criminal mischief in the first degree if he or she purposely and without legal justification destroys or causes damage to . . . [a]ny property of another." In addition, Jester claims that the statute is unconstitutionally vague because it does not define the term "legal justification." With regard to this argument, Jester fails to expand on either of these assertions, and this court has repeatedly held that it will not research or develop arguments for appellants. *See Hathcock v. State*, 357 Ark. 563, 182 S.W.3d 152 (2004); *see also Polston v. State*, 360 Ark. 317, 201 S.W.3d 406 (2005) (holding that we will not consider an argument when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken). Given our precedent, it is clear that Jester's fourth sub-argument must, once again, fail. In sum, Jester has failed in his attempt to show that § 5-38-203 is unconstitutional.

For his next major point on appeal, Jester claims that the circuit court erred in refusing to submit his proffered jury instruction setting forth his definition of the term "legal justification." We have stated that a party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support the giving of the instruction. *Wilson v. State,* 364 Ark. 550, 222 S.W.3d 171 (2006). However, we will not reverse a circuit court's refusal to give a proffered instruction unless there was an abuse of discretion. *Jones v. State,* 336 Ark. 191, 204, 984 S.W.2d 432, 438 (1999). Finally, a circuit court should not use a non-model instruction unless it finds that the model instruction does not accurately reflect the law. *Jones, supra.*

Jester's proffered instruction on "legal justification" provided as follows:

> To sustain this charge, the State must prove, beyond a reasonable doubt, that Neal Jester did, without a reasonable excuse, destroy or cause damage to property owned by Universal Leasing Corp. In order to sustain this charge, the State must prove, beyond a reasonable doubt, both elements of this crime.

According to Jester, there was evidence in the record that indicated that Wilson instructed Jester to "treat [the land] as your own." Jester took this instruction as his "legal justification" to harvest the timber on Wilson's land.

Jester correctly points out that "justification" is not an affirmative defense that must be pled, but becomes a defense when any evidence tending to support its existence is offered to support it. *Anderson v. State,* 353 Ark. 384, 404, 108 S.W.3d 592, 605 (2003). Because justification is not an affirmative defense, the State has the burden of negating the defense once it is put in issue. *Id.* According to Jester, the jury should have been instructed on the definition of justification and informed that it was the State's burden to disprove its existence.

In response, the State contends that the term "legal justification" is common knowledge and plainly understood and no instruction was needed. Moreover, the State argues that the actual instructions that were given to the jury clearly established the State's burden of proof with respect to the elements of justification. The instructions read in relevant part as follows: "The State must prove the following things beyond a reasonable doubt: first,

that Neal Jester purposely and without legal justification destroyed or caused damage to the property of Universal Leasing Corporation."

■   Although the proffered instruction is a correct statement of the law, it is not a model jury instruction and, further, it is unnecessary to give it when its substance is covered by other instructions. *See Jones v. State*, 336 Ark. 191, 205, 984 S.W.2d 432, 439 (1999); *Ventress v. State*, 303 Ark. 194, 794 S.W.2d 619 (1990). We cannot say that Jester's proffered instruction was essential to the jury's understanding of the State's burden of proof or its grasp of the term "legal justification." Thus, we hold that the circuit court did not abuse its discretion in rejecting Jester's instruction.

For his final point for reversal, Jester argues that it was error for the circuit court to refuse his proffered instruction on mistake of fact. Jester's proffered his own instruction on "mistake of fact," which provided as follows:

> The defendant has submitted evidence of the defense of mistake of fact. Mistake of fact is an affirmative defense under Ark. Code Ann. § 5-2-206.
>
> The defendant has the burden of proving by a preponderance of the evidence that he was mistaken in his belief of fact that he acted with legal justification to harvest timber on the property in question.
>
> If you find any reasonable doubt on the issue as to whether defendant acted under a mistaken belief in fact you are legally obligated to only consider and decide the defendant's culpability on the lesser charge of Criminal Mischief in the 2nd degree during your deliberations.

A circuit court does not err by rejecting an instruction that inaccurately states the law. *See generally Wilson v. State*, 364 Ark. 550, 222 S.W.3d 171 (2006) (holding that a party is entitled to a jury instruction *when it is a correct statement of the law*) (emphasis added); *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 459, 47 S.W.3d 866, 886 (2001) (holding that a physician was not entitled to a proposed defamation instruction that contained language regarding defamation *per se*, which had been abolished). Here, Jester's proffered instruction is replete with inaccurate statements of law.

First, Ark. Code Ann. § 5-2-206(a) (Repl. 2006) provides that a mistake of fact is a *defense*, not an affirmative defense, as contended by Jester. Section 5-2-206(a) provides as follows:

(a) It is a *defense* to a prosecution that the actor engaged in the conduct charged to constitute the offense under a mistaken belief of fact if:

(1) The statute defining the offense or a statute relating to the offense expressly provides that a mistaken belief of fact constitutes a defense; or

(2) Mistaken belief of fact establishes a defense of justification provided by § 5-2-601 et seq.

(Emphasis added.) Unlike *mistake of law*, which is an affirmative defense according to § 5-2-206(c)[3], mistake of fact is simply a defense, and the State has the burden of negating that defense once it is put in issue. *See Killman v. State*, 274 Ark. 422, 625 S.W.2d 489 (1981) (the State must prove each element of the charge beyond a reasonable doubt, which includes negating a defense once it is put in issue). This analysis is directly contrary to Jester's proffered instruction, wherein he suggests that mistake of fact is an affirmative defense.

Second, the last paragraph of Jester's proposed instruction is completely incorrect. The plain language of Jester's proffered instruction suggests that a defendant who fails to carry his or her burden of proof on an affirmative defense is entitled to have the jury consider only lesser-included offenses. This is an inaccurate statement, and Jester has not made an attempt to prove otherwise. Such a proffered instruction could do nothing but confuse a jury; thus, we hold that the circuit court was correct in

---

[3] Arkansas Code Annotated section 5-2-206(c) states:

(c) It is an affirmative defense to a prosecution that the actor engaged in the conduct charged to constitute the offense believing that the conduct did not as a matter of law constitute an offense, if the actor acted in reasonable reliance upon an official statement of the law contained in:

(1) A statute or other enactment afterward determined to be invalid or erroneous;

(2) The latest judicial decision of the highest state or federal court that has decided the matter; or

(3) An official interpretation of a public servant or agency charged by law with responsibility for the interpretation or administration of the law defining the offense.

refusing it. *See Greene v. State*, 356 Ark. 59, 146 S.W.3d 871, (2004); *Townsend v. State*, 308 Ark. 266, 824 S.W.2d 821 (1992).[4]

For the foregoing reasons, we affirm.

---

[4] Notably, the circuit court refused to give Jester's proffered jury instruction because Jester apparently failed to inform the prosecution during discovery that he planned on using the mistake-of-fact-defense at trial. Jester argues that the prosecution was put on constructive notice of the mistake-of-fact-defense given the contents of the record and its numerous references to the fact that Jester believed that Wilson gave him permission to harvest the timber. Despite this argument, it is clear that the circuit court was correct in refusing to submit Jester's mistake-of-fact-instruction because it contained inaccurate statements of law. *Warr v. Williamson*, 359 Ark. 234, 195 S.W.3d 903 (2004) (holding that we will affirm the circuit court when it has reached the right result even though it was based on the wrong reason).