Karen R. Baker, Justice, dissenting.
I must dissent from the majority's decision to reverse and remand the circuit court's order disqualifying Park's attorney and Lindsey's in-house legal department.
First, I disagree with the majority's decision to overrule Burnette v. Morgan , 303 Ark. 150, 794 S.W.2d 145 (1990), and Norman v. Norman , 333 Ark. 644, 970 S.W.2d 270 (1998). Specifically, I disagree with the majority's determination that Burnette and Norman added the requirement that the challenged attorney prove that he or she did not have access to the confidential information. Rather than adding this requirement, Burnette and Norman were based on the court's interpretation of the rules of professional conduct and the corresponding comments.
Rule 1.9(b) states that "[a] lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client: (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent confirmed in writing[.]" Ark. R. Prof'l Conduct 1.9(b)(1)-(2) (emphasis added). The majority focuses on comment 5 of Rule 1.9, which states that "[p]aragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected...." Ark. R. Prof'l Conduct 1.9 cmt. [5]. However, comment 6 of Rule 1.9 addresses a lawyer's access to files and states that the
[a]pplication of paragraph (b) depends on a situation's particular facts, aided by *761 inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussions of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients. In such an inquiry, the burden of proof should rest upon the firm whose disqualification is sought.
Id. cmt. [6] (emphasis added). Thus, in my view, as explained in Norman and Burnette , maintaining confidentiality is "a question of access to information," Burnette , 303 Ark. at 155-56, 794 S.W.2d at 148, which is to be resolved by examining the facts of the particular case under consideration, and "the burden of proving not only a lack of knowledge but also a lack of access to information should rest with the challenged attorney alleged to be disqualified." Id. , 794 S.W.2d at 148. Therefore, as discussed above, I disagree that Norman and Burnette added a requirement to Rule 1.9; rather, the court's analysis in those cases was based on its interpretation of the rules and related comments.
Second, as evidenced by Norman 's interpretation of Rule 1.9-which has served as precedent for the past twenty years-and the majority's decision to overrule Norman , Rule 1.9 is subject to more than one interpretation and is therefore ambiguous. When we construe rules, our standard of review is de novo as it is for this court to determine what a rule means. See Taylor v. Biba , 2014 Ark. 22, 2014 WL 260978 (citing Richard v. Union Pac. R.R. Co. , 2012 Ark. 129, 388 S.W.3d 422 ). We construe rules using the same means and canons of construction used to interpret statutes. Id. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. (citing McNabb v. State , 367 Ark. 93, 238 S.W.3d 119 (2006) ). When the language is plain and unambiguous, there is no need to resort to rules of statutory construction, and the analysis need go no further. Id. (citing Richard , 2012 Ark. 129, 388 S.W.3d 422 ). However, "when a statute is ambiguous, ... we must interpret it according to the legislative intent, and its review becomes an examination of the whole act." Johnson v. Dawson , 2010 Ark. 308, at 5, 365 S.W.3d 913, 916. In construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. Lawhon Farm Servs. v. Brown , 335 Ark. 272, 984 S.W.2d 1 (1998). Statutes relating to the same subject must be construed together and in harmony, if possible. Jester v. State , 367 Ark. 249, 239 S.W.3d 484 (2006).
Here, because Rule 1.9 is open to more than one interpretation, it is ambiguous. While the circuit court did not rule on whether Park's attorney should have been disqualified based on an appearance of impropriety, applying our rules of interpretation, we should consider the Arkansas Rules of Professional Conduct as a whole and every provision must be construed together and in harmony, if possible. However, the majority ignores the appearance-of-impropriety standard and fails to consider a part of the foundation upon which our rules of professional conduct are built. Specifically,
*762 A lawyer owes a solemn duty to uphold the integrity and honor of the profession; to encourage respect for the law and for the courts; to act as a member of a learned profession; to conduct affairs so as to reflect credit on the legal profession; and to inspire the confidence, respect and trust of clients and the public. To accomplish those objectives, the lawyer must strive to avoid not only professional impropriety, but also the appearance of impropriety. The duty to avoid the appearance of impropriety is not a mere phrase. It is part of the foundation upon which are built the rules that guide lawyers in their moral and ethical conduct. This obligation should be considered in any instance where a violation of the rules of professional conduct are at issue. The principle pervades these Rules and embodies their spirit.
Ark. R. Prof'l Conduct pmbl. § [13A] (emphasis added). Additionally, comment 37 to Rule 1.7 contains almost identical language regarding the appearance of impropriety;[3] and comment 10 to Rule 1.9 states that the duty to avoid the appearance of impropriety discussed in comment 37 to Rule 1.7 is likewise applicable to Rules 1.9 and 1.10. Further, in Burnette , we explained our holding in First American Carriers, Inc. v. Kroger Co. , 302 Ark. 86, 787 S.W.2d 669 (1990) :
We recognized that the "appearance of impropriety" prohibition of Canon 9 of the American Bar Association Code of Professional Responsibility was not a part of the Model Rules of Professional Responsibility which we have adopted. Nevertheless, we there recognized and here reassert that the principle is yet alive and, though not controlling, is a rock in the foundation upon which is built the rules guiding lawyers in their moral and ethical conduct. This is a factor that should be considered in any instance where a violation of a rule of professional conduct is at issue.
303 Ark. at 156, 794 S.W.2d at 148. While the appearance-of-impropriety standard is not controlling, the rules of professional conduct and our case law make clear that this standard is an important factor for our consideration. "This obligation should be considered in any instance where a violation of the rules of professional conduct [is] at issue. The principle pervades these Rules and embodies their spirit." Ark. R. Prof'l Conduct pmbl. § [13A]. By ignoring the appearance-of-impropriety standard, the majority misses the broader overall standard encompassed within the very spirit of the rules of professional conduct.
Because I would affirm the circuit court's order disqualifying Park's attorney and Lindsey's in-house legal department, I must respectfully dissent.

Comment 37 to Rule 1.7 states in its entirety:
As an integral part of the lawyer's duty to prevent conflict of interests, the lawyer must strive to avoid not only professional impropriety, but also the appearance of impropriety. The duty to avoid the appearance of impropriety is not a mere phrase. It is part of the foundation upon which are built the rules that guide lawyers in their moral and ethical conduct. This obligation should be considered in any instance where a violation of the Rules of Professional Conduct are at issue. The principle pervades these Rules and embodies their spirit.